E. Don Smith et al. *v.* Zoning Board of Appeals of the Town of Greenwich et al.
(14632)
(14633)

Peters, C. J., Callahan, Borden, Berdon and Katz, Js.

Argued April 28—decision released August 10, 1993

*Joyce H. Young,* assistant town attorney, for the appellant (named defendant).

*Everett E. Newton,* with whom, on the brief, were *William E. Hegarty, Russell L. Brenneman* and *John C. Yavis, Jr.,* for the appellants (defendant Historical Society of the Town of Greenwich, Inc., et al.).

*E. Don Smith,* pro se, with whom was *Eileen Smith,* pro se, the appellees (plaintiffs).

*Robin Messier Pearson, Michael J. Cacace* and *Mark K. Branse* filed a brief for the Planning and Zoning Law Section of the Connecticut Bar Association as amicus curiae.

KATZ, J. The dispositive issue in this appeal is whether the planning and zoning board of appeals for the town of Greenwich (board) is authorized, under the Greenwich town charter (charter) and the applicable subdivision regulations, to consider historical factors in determining whether to grant or deny an application to subdivide property located in a historic district. The defendants, the board, the Historical Society of the Town of Greenwich, Inc. (historical society), and Anita De Lesseps Keefe, a landowner within 100 feet of the property, appeal, upon our grant of certification,[1] from

---

[1] We granted certification to appeal the following issue: "In acting on a subdivision proposal that conforms to applicable zoning regulations, may a planning and zoning commission take into account the fact that the prop-

the judgment of the Appellate Court. The Appellate Court concluded that the board had not been authorized to consider historical factors in reviewing a subdivision application and reversed the judgment of the trial court. *Smith* v. *Zoning Board of Appeals*, 29 Conn. App. 28, 35, 614 A.2d 464 (1992). We disagree with the Appellate Court and, accordingly, reverse the judgment.

The following relevant facts are undisputed. The plaintiffs, E. Don Smith and Eileen Smith, own property located at 35 Strickland Road in Greenwich (property). The property is situated in the Mill Pond Historic District (district), which was established under article 5 of the charter and General Statutes § 7-147b. The property is also in an R-7 zone classification, which encompasses single homes.

In January, 1987, the plaintiffs submitted a preliminary subdivision application to the planning and zoning commission of the town of Greenwich (commission), seeking to subdivide the property into three lots. After a hearing, the commission preliminarily approved the plaintiffs' application, subject to the resolution of fourteen issues prior to the submission of the final application.[2] In particular, the commission required the

erty is located in a historic district and that the development of the property may be inconsistent with historic preservation of the district?" *Smith* v. *Zoning Board of Appeals*, 224 Conn. 912, 913, 617 A.2d 167, 168 (1992). In the proceeding at issue here, the zoning board of appeals acted, in effect, as the planning and zoning commission because it reviewed the challenged decision of the commission de novo. See footnote 4.

[2] The commission's preliminary approval provided the following: "1. That Lot 1 be shifted to the southerly property boundary of the tract. Concurrently that portion of the park and playground area displaced by the relocation of Lot 1 shall be moved to the northerly property line of Lot 1.

"2. The Commission observed that the area reserved for park and playground being 14.67%, conventionally required to be 15%, is acceptable as it is calculated from a gross area which includes a free-throw lot for which park and playground is not required.

"3. The utility easement shall be located so as to minimize impacts to significant trees.

plaintiffs to meet with the historic district commission "in order to determine an appropriate house location for Lot 1." The commission further instructed that "[t]he preservation of significant trees shall be taken into consideration in determining house location, as well as conformity as nearby as possible to the existing set-back/streetscape of house locations to the south."

Pursuant to the commission's requirement, the plaintiffs met with members of the historic district commis-

"4. The applicant shall meet with the Historic District Commission in order to determine an appropriate house location for Lot 1. The preservation of significant trees shall be taken into consideration in determining house location, as well as conformity as nearby as possible to the existing set-back/streetscape of house locations to the south.

"5. The applicant shall meet with the Conservation Coordinator in order to develop tree preservation details as required by house and utility easement siting.

"6. That the Declaration of Restrictions for the reserved areas be submitted to the Law Department in accordance with the model document.

"7. That provisions for access easements be indicated on the record sheet.

"8. That the existing southerly curbcut be the sole accessway to Lot 1.

"9. That the appropriate utility easements to the northerly property (Ward) be indicated on the record sheet.

"10. That a sight line improvement plan indicating any modifications to existing features of walls and trees, etc., be submitted for review and approval by the Department of Public Works. Historic District Commission should also comment on alternate plans to achieve acceptable sight distance, if significant trees or the stone wall are adversely [a]ffected.

"11. The applicant must obtain a sewer permit prior to the issuance of a Building Permit.

"12. The applicant shall obtain confirmation from the Engineering Division that there will be no adverse impacts to nearby properties and water bodies due to site drainage.

"13. The following note is to appear on the construction sheet: 'Prior to any excavation(s) the applicant(s), in accordance with Public Act 77-350, shall be required to contact Call Before You Dig, Inc., at 1-800-922-4455 for markout of underground utilities.'

"14. Submit a driveway plan in accordance with Sec. 6-131 [of the Greenwich Municipal Code]. In the event significant open space or trees are impacted, it is recommended that the applicant apply for a variance in order to use as much of the existing driveway as possible while providing safe sight distance and maneuverability. The plan should be reviewed with Planning Staff, HDC [historic district commission] and D.P.W. [department of public works] prior to submitting final plan."

sion. Although, in the absence of a final, approved subdivision plan the historic district commission could not take any formal action concerning the appropriateness of the building on lot 1, the historic district commission did, nonetheless, express its opposition to the proposal.

The plaintiffs subsequently submitted a final subdivision application. On November 22, 1988, the commission denied the plaintiffs' final subdivision application because granting it would "permit construction of a house in the . . . significant open space, thereby disrupting an essential characteristic of the historic district."[3]

The plaintiffs appealed from the decision of the commission to the board pursuant to § 103 (a) of the char-

---

[3] The commission adopted the following final resolution: "WHEREAS, the Town of Greenwich Plan of Development, 1984 states as a basic development objective the preservation of historic and architectural resources; and

"WHEREAS, the subject lot is contained within the duly established Mill Pond Historic District, and

"WHEREAS, the Commission recognizes that the existing streetscape, which is defined by the open space of the subject tract in relation to adjoining historical properties, structures, and open spaces is a significant element of the historic district in terms of visual appearance as well as historic use and occupancy of the land; and

"WHEREAS, the subdivision would permit construction of a house in the previously defined, significant open space, thereby disrupting an essential characteristic of the historic district; and

"WHEREAS, a stated purpose of the Subdivision Regulations of the Town is to 'Further the orderly development of the Town in accordance with the Town Plan of Development' "; and

"WHEREAS, the Commission finds that there are other zoning options for development of the property which would provide for the same or greater number of dwelling units while preserving the site's open space and natural features which are significant components of the historic streetscape;

"THEREFORE, BE IT RESOLVED that final Subdivision #1066 of E. Don Smith and Eileen Smith owners of property located on Strickland Road consisting of a record sheet prepared by J.A. Kirby Company dated March 17, 1988 revised September 26, 1988 is hereby denied."

ter.[4] Pursuant to § 103 (a), the board conducted a de novo review of the application and held a public hearing. The board found that the plaintiffs were seeking to subdivide the property into three lots. Lot 1 would contain the plaintiffs' residence; lot 2 would contain an existing barn; and lot 3, a presently unimproved area in front of the plaintiffs' residence, would contain a single family house. The proposed building on lot 3 is the focus of this dispute.

Following the public hearing, the board denied the plaintiffs' appeal. The board concluded that the proposed building on lot 3 would disrupt the "sweeping front lawn" and, therefore, would not be consistent with the district's historic streetscape. The board stated that "[t]he proposed subdivision did not meet the purposes of the Subdivision Regulations as provided in Section 6-260,[5] thereof. It does not conform to the Town of Greenwich Plan of Development in that it does not meet the basic objectives of preservation of historic and architectural resources. Furthermore, it does not preserve the natural features of the landscape; namely, the historic streetscape." The board also concluded that the plaintiffs' application was subject to review under the Coastal Area Management Act (act), General Stat-

[4] Section 103 (a) of the Greenwich town charter provides: "The action of the Commission in approving or disapproving any subdivision may be reviewed by the Planning and Zoning Board of Appeals on petition by any Town agency, the Board of Education or the Housing Authority, by any person owning property in the Town, or by the person seeking approval of such subdivision, provided written notice of such petition is filed by the petitioner with the Commission and the Town Clerk within twenty (20) days from the effective date of such action. Upon receipt of such written notice, the Commission shall transmit a record of the proceedings had before it to the Planning and Zoning Board of Appeals which after a public hearing had de novo shall have the power to uphold or reverse such action."

[5] Section 6-260 of the Greenwich Land Use Regulations, also referred to as the subdivision regulations, provides in pertinent part: "PURPOSES OF ARTICLE. (a) The purposes of this Article shall be to: (1) Further the orderly development of the Town in accordance with the Town Plan of Development."

utes § 22a-90 et seq. Applying the standards in the act, the board found that the subdivision proposal "would have an adverse impact on coastal resources because of the alteration of natural features of vistas."

The plaintiffs appealed from the decision of the board to the trial court pursuant to § 104 of the charter and General Statutes § 8-8 (2) (b).[6] Although the trial court disagreed with the applicability of one of the statutes, the act, on which the board had relied, the court concluded that other statutes, as well as the town's own land use regulations, supported the board's action. The trial court therefore dismissed the plaintiffs' appeal.

The trial court concluded that the board had the authority to consider the historic streetscape for three reasons: the provisions of the town's subdivision regulations, the statutory and town policy in favor of historic preservation and a restriction contained in the plaintiffs' deed. Section 6-260 provides that the purpose of the subdivision regulations is to "[f]urther the orderly development of the Town in accordance with the Town Plan of Development." Because the town plan has "as one of its 'Basic Objectives' the preservation of historic resources," the trial court concluded that the board acted within its authority in considering the historic streetscape. Additionally, § 6-266 (a) (20) of the Greenwich Land Use Regulations specifically permits an evaluation of historical factors, noted in § 6-266 (a) (19), in subdivisions located "within the coastal zone." Furthermore, the town's subdivision regulations are consistent with public policy favoring historic preservation

---

[6] Section 104 of the Greenwich town charter provides: "SUBDIVISION APPEALS. Any person aggrieved by an official action of the Planning and Zoning Board of Appeals may appeal therefrom in the manner and with the effect provided in Sec. 8-28 of the General Statutes."

General Statutes § 8-8 (2) (b) provides in pertinent part: "[A]ny person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located."

that is contained in General Statutes § 7-147a et seq. and § 6-307 of the Greenwich Land Use Regulations. Finally, a restriction in the plaintiffs' deed states that " '[s]aid premises are conveyed subject to . . . [r]egulations imposed by reason of the fact that the premises are part of a historic district as established by the Town of Greenwich. . . .' "

The trial court affirmed the board's conclusion that the plaintiffs' subdivision proposal would impair the historic streetscape. The trial court reasoned that "[t]he Smiths' side of Strickland Road is characterized by homes on lots with sweeping front lawns. The plaintiffs plan to convert their front lawn into a building lot and construct thereon a house with the thirty feet by forty feet footprint, and setbacks of twenty-five feet from the front property line, twenty feet from the south property line, and fifteen feet from a line of trees. These exhibits show that construction of a house on the front lawn would drastically alter the streetscape, and support the Board's conclusion in that regard."

Finally, the trial court considered the plaintiffs' argument that "the denial of their plan constitutes a taking of property without due process of law." The court noted, however, that "[t]he Board rejected this claim, concluding that because other alternatives for development of the property exist, the plaintiffs were not deprived of their development rights. The defendant Board argues that [the] plaintiffs have failed to establish a diminution in the value of their property as a result of the decision, and further, only one proposal has been rejected, not all proposals."

Upon a grant of certification, the plaintiffs appealed to the Appellate Court from the trial court's dismissal of their appeal. The Appellate Court reversed the judgment of the trial court, concluding that the board did not have the authority to consider historical factors in

deciding whether to grant or deny a subdivision application because: "(1) the enabling statutes on subdivisions did not give the board the authority to include historical factors in its regulations; (2) the terms 'town plan of development,' 'historic factors' and 'historic streetscape' are not known and fixed standards required for subdivision regulations; (3) the Greenwich town charter forbids the board from denying a subdivision application based on the plan of development; and (4) it is the duty of the historic district commission, not the planning and zoning commission or the board of appeals, to decide whether a building should be erected in a historic district." *Smith* v. *Zoning Board of Appeals,* supra, 35. Having ourselves granted certification for the defendants to appeal, we now reverse the judgment of the Appellate Court.

I

In reviewing an appeal from an administrative agency, the trial court must determine whether " 'the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion.' " *Board of Education* v. *State Employees Retirement Commission,* 210 Conn. 531, 541, 556 A.2d 572 (1989); *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* 206 Conn. 554, 573, 538 A.2d 1039 (1988). " 'The trial court may not retry the case or substitute its judgment for that of the agency . . . .' " *Board of Education* v. *State Employees Retirement Commission,* supra, 540; *Burnham* v. *Planning & Zoning Commission,* 189 Conn. 261, 265, 455 A.2d 339 (1983). The principal issue in this case, however, presents "questions of law turning upon the interpretation of statutes." *Board of Education* v. *State Employees Retirement Commission,* supra. The defendants dispute the Appellate Court's conclusion that no statutory or regulatory authority existed allowing the commission to consider historical factors. "[T]he construction of a statute on an issue that has not previ-

ously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference." (Internal quotation marks omitted.) Id.

## A

The defendants claim initially that the Appellate Court incorrectly concluded that the commission lacked the authority to promulgate subdivision regulations that provide for the consideration of historical or architectural factors. We agree with the defendants.

"It has been said that the whole field of subdivision regulation is peculiarly a creature of legislation. It is therefore imperative that before subdivision regulations may be made operative, the necessary statutory authorization of such regulation must exist. . . . In other words, in order to determine whether the regulation in question was within the authority of the commission to enact, we do not search for a statutory prohibition against such an enactment; rather, we must search for statutory authority for the enactment." (Internal quotation marks omitted.) *Finn* v. *Planning & Zoning Commission,* 156 Conn. 540, 545, 244 A.2d 391 (1968). In determining whether the board had the authority to deny subdivision applications for historical reasons, we must first determine whether the commission has the authority to enact subdivision regulations that provide for such consideration. The town of Greenwich exercises its zoning power by virtue of a special act.[7] 26 Spec. Acts 325, No. 469 (1951). "This act established the [Greenwich Town Charter], which is the source of

[7] Municipalities in Connecticut may exercise zoning power either by adopting the provisions of chapter 124 of the General Statutes, §§ 8-1 through 8-13a, or by enacting a municipal charter authorized by a special act of the legislature. *Burnham* v. *Planning & Zoning Commission,* 189 Conn. 261, 263–64, 455 A.2d 339 (1983). "In either case, the power of the local zoning authority to adopt regulations is limited by the terms of the statute or special act." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 42.

authority" to enact and enforce subdivision regulations. *Norwich* v. *Norwalk Wilbert Vault Co.,* 208 Conn. 1, 8, 544 A.2d 152 (1988); *O'Meara* v. *Norwich,* 167 Conn. 579, 581, 356 A.2d 906 (1975). "The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised. . . ." (Internal quotation marks omitted.) *West Hartford Taxpayers Assn., Inc.* v. *Streeter,* 190 Conn. 736, 742, 462 A.2d 379 (1983). "Agents of a city, including commissions, have no source of authority beyond the charter. *Perretta* v. *New Britain,* 185 Conn. 88, 92, 440 A.2d 823 (1981)." (Internal quotation marks omitted.) *Norwich* v. *Norwalk Wilbert Vault Co.,* supra, 8–9.

The charter is the source of authority governing subdivisions, except if there is a clear legislative intent that the General Statutes control. *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 206, 355 A.2d 21 (1974). The power of the planning and zoning commission to adopt subdivision regulations is limited by the terms of the statute or special act. *Caldrello* v. *Planning Board,* 193 Conn. 387, 391, 476 A.2d 1063 (1984); *Bishop* v. *Board of Zoning Appeals,* 133 Conn. 614, 619, 53 A.2d 659 (1947); see, e.g., *Reed* v. *Planning & Zoning Commission,* 208 Conn. 431, 544 A.2d 1213 (1988). "The ordinance must rest primarily upon the enabling act and must not go beyond the power delegated by it." *Bishop* v. *Board of Zoning Appeals,* supra.

Section 83 of the charter established the planning and zoning commission. In addition to other powers granted to the commission by the charter, § 83 also conferred upon the commission "the powers and duties conferred upon zoning commissions under the General Statutes." Section 101 of the charter sets forth those areas that the commission's subdivision regulations are meant to control or regulate. Section 101 (d) provides that "[t]he regulations shall provide that the land to be subdivided shall be of such character that it can be used for build-

ing purposes without danger to health or the public safety, that proper provision shall be made for water, drainage and sewerage, and, in areas contiguous to brooks, rivers or other bodies of water subject to flooding, including tidal flooding, that provision shall be made for protective flood control measures and that the proposed streets are in harmony with existing or proposed principal thoroughfares shown in the Plan of Development as described in Section 94, especially in regard to safe intersections with such thoroughfares, and so arranged and of such width, as to provide an adequate and convenient system for present and prospective traffic needs."[8] General Statutes § 8-25, the applicable section of the General Statutes, is substantially the same.

The plaintiffs argue that neither § 101 of the charter nor any other section of the charter addressing subdivisions specifically refers to historical factors. By contrast, there is specific language authorizing the commission to regulate and make provisions for such matters as water, drainage, sewage, flood control, street layout and grading, public utilities and the provision of parks and playgrounds. Greenwich Town Charter § 101 (d), (e) and (g). Thus, the plaintiffs maintain that because the charter specially refers to several items that must be provided for in the regulations, and does

[8] Section 101 of the Greenwich town charter provides in pertinent part: "(a) No subdivision of land shall be made until a plan for such subdivision has been approved by the Commission. Any person, firm or corporation making any subdivision of land without the approval of the Commission shall be fined not more than Two Hundred Dollars ($200.00) for each lot sold or so subdivided. . . .

"(c) Before exercising the powers granted in this Section the Commission shall adopt regulations covering the subdivision of land. No such regulations shall become effective until after a public hearing, notice of the time, place and purpose of which shall be given by publication in a newspaper of general circulation in the municipality at least seven (7) days prior to the date of such hearing, and until the same or any material amendment thereof, shall be approved by the Representative Town Meeting."

not expressly include the consideration of historical factors, the commission lacks the authority to enact subdivision regulations that allow consideration of historical factors.

The defendants claim, on the contrary, that the commission's authority to promulgate regulations that consider historical factors arises from § 101 (d) of the charter, which provides that subdivision "regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to *health or the public safety . . . ."* (Emphasis added.) The defendants argue that public health and safety includes protecting the environment, which, in turn, includes historic preservation. We agree with the defendants.

Although neither the charter nor the General Statutes provides a specific definition of "public health and safety" in the context of zoning regulations, other related statutes establish that environmental conservation is a legitimate concern within this broad regulatory rubric. The Environmental Protection Act (EPA); General Statutes § 22a-1 et seq.; includes the environment as a facet of public health and safety. Section 22a-1 provides in part that "the policy of the state of Connecticut is to conserve, improve and protect its . . . *environment* . . . in order to enhance the *health, safety* and welfare of the people of the state." (Emphasis added.) In addition, the Inland Wetlands and Watercourses Act; General Statutes § 22a-36 et seq.; provides that "[t]he preservation and protection of the wetlands and watercourses . . . is essential to the health, welfare and safety of the citizens of the state. . . ." General Statutes § 22a-36; see *Mario* v. *Fairfield,* 217 Conn. 164, 168, 585 A.2d 87 (1991). These statutes illuminate the statutory phrase before us in this case because they address generally related subjects that the legislature may be presumed to have considered

in like manner. *Link* v. *Shelton,* 186 Conn. 623, 627, 443 A.2d 902 (1982). In light of these principles, we find a relationship between protecting the public health and safety and protecting the environment. Accordingly, we conclude that public health and safety includes consideration of the "environment."

Although this court has not defined the contours of the term "environment," we may look again to the meaning given to this term in other statutory provisions. *Link* v. *Shelton,* supra. Once it is established that "public health and safety" includes consideration of environmental concerns, the environmental statutes make it clear that historical factors are a recognized element of environmental law. The EPA in General Statutes § 22a-1c includes a broad definition of actions that significantly affect the environment: "activities . . . proposed to be undertaken by state departments, institutions or agencies . . . which could have a major impact on the state's . . . *historic structures* . . . ." (Emphasis added.) Additionally, General Statutes § 22a-19a states in part that the EPA "shall be applicable to the unreasonable destruction of *historic structures* and landmarks of the state, which shall be those properties (1) listed or under consideration for listing as individual units on the National Register of Historic Places (16 USC 470a, as amended) or (2) which are a part of a district listed or under consideration for listing on said national register and which have been determined by the state historic preservation board to *contribute* to the *historic significance of such district.*" (Emphasis added.) The EPA recognizes that the protection of many environmental concerns, such as air and water, is essentially the preservation of the resource that is being used. These regulations " 'guarantee that important land functions continue to operate while the land is being used, no matter what the use.' " T. Tondro, Connecticut Land Use Regulation

(2d Ed. 1992) p. 263. Similarly, the protection of historical factors is a preservation of the function of the resource being used. Id.; see *Penn Central Transportation Co.* v. *New York City,* 438 U.S. 104, 108, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978) ("[h]istoric conservation is but one aspect of the much larger problem, *basically an environmental one,* of enhancing . . . the quality of life for people" [emphasis added; internal quotation marks omitted]). We note, as well, that we have interpreted the power to protect the "general welfare" to include the authority to consider historical factors. *Figarsky* v. *Historic District Commission,* 171 Conn. 198, 207–209, 368 A.2d 163 (1976).

Accordingly, we conclude that because the phrase "public health and safety" includes environmental factors, it includes historical factors. The commission, therefore, had the authority to promulgate subdivision regulations that take into account historical factors.

## B

We next must address whether the Appellate Court correctly determined that the town's charter prohibits the board from denying a subdivision application on the basis of nonconformance with the town plan.[9] We agree with the Appellate Court's conclusion that the board may not deny a subdivision application solely on the basis of nonconformance with the town plan.

---

[9] Although the plaintiffs did not raise this claim in the trial court, "[t]he court may in the interest of justice notice plain error not brought to the attention of the trial court." Practice Book § 4185; *Ralto Developers, Inc.* v. *Environmental Impact Commission,* 220 Conn. 54, 59, 594 A.2d 981 (1991). " 'We have noticed plain error in the failure of the trial court to apply a clearly relevant statute to the case before it.' " *Ralto Developers, Inc.* v. *Environmental Impact Commission,* supra; *State* v. *Hinckley,* 198 Conn. 77, 88, 502 A.2d 388 (1985). Because this charter limitation is applicable law, we will address it. *Cunningham* v. *Cunningham,* 72 Conn. 157, 160, 44 A. 41 (1899).

In its decision, the board made clear that it denied the plaintiffs' subdivision application because it was not in conformance with the plan. As the Appellate Court noted, § 98 (b) of the charter states that "[t]he Commission shall not refuse approval of any subdivision on the ground that such subdivision creates or will tend to create a use of land contrary to that shown upon the Plan of Development, except insofar as the Commission may, under Section 101, require the streets and drains in such subdivision to conform to the street and drainage system shown on the Plan of Development."

"When a charter is construed the rules of statutory construction generally apply." *Arminio* v. *Butler*, 183 Conn. 211, 217, 440 A.2d 757 (1981). "In arriving at the intention of the framers of the charter the whole and every part of the instrument or enactment must be taken and compared together. In other words, effect should be given, if possible, to every section, paragraph, sentence, clause and word in the instrument and related laws. The real intention when once accurately and indubitably ascertained, will prevail over the literal sense of the terms. When the words used are explicit, they are to govern, of course. If not, then recourse is had to the context, the occasion and necessity of the provision, the mischief felt, and the remedy in view." (Internal quotation marks omitted.) Id., 217–18.

The charter explicitly provides that a subdivision application cannot be denied solely on the basis of the town plan. "[W]here the language is plain, we must give effect to the intention expressed in the regulation." *Schwab* v. *Zoning Board of Appeals,* 154 Conn. 479, 483, 226 A.2d 506 (1967). The charter limitation is consistent with this court's prior recognition that a town plan is merely advisory. *Lathrop* v. *Planning & Zoning Commission,* 164 Conn. 215, 223, 319 A.2d 376 (1973); *Spada* v. *Planning & Zoning Commission,* 159 Conn. 192, 200, 268 A.2d 376 (1970); *Dooley* v. *Town Plan*

& *Zoning Commission,* 154 Conn. 470, 473, 226 A.2d
509 (1967). The purpose of the plan is to set forth the
most desirable use of land and an overall plan for the
town. Greenwich Town Charter §§ 94, 97; see *Mott's
Realty Corporation* v. *Town Plan & Zoning Commission,* 152 Conn. 535, 538, 209 A.2d 179 (1965). *Purtill*
v. *Town Plan & Zoning Commission,* 146 Conn. 570,
572, 153 A.2d 441 (1959). Because the overall objectives contained in the town plan must be implemented
by the enactment of specific regulations, the plan itself
can operate only as an interpretive tool. See, e.g.,
*Raybestos-Manhattan, Inc.* v. *Planning & Zoning Commission,* 186 Conn. 466, 475, 442 A.2d 65 (1982). We
agree, therefore, with the Appellate Court that the
board incorrectly denied the plaintiffs' subdivision on
the ground that it was inconsistent with the town plan.

## C

Our conclusion that the board incorrectly denied the
plaintiffs' application on the basis of noncompliance
with the town plan would ordinarily require that we
affirm the Appellate Court's judgment. On appeal to
the Appellate Court, as well as on appeal to this court,
however, the defendants raised alternative grounds in
their briefs upon which the trial court's decision may
be affirmed. After review of the defendants' arguments, we conclude that the Appellate Court incorrectly
dismissed one of these alternate grounds. "[T]his court
is authorized to rely upon alternative grounds supported by the record to sustain a judgment. . . . 'The
. . . judgment will be affirmed, though based on erroneous grounds, if the same result is required by law.' "
*Henderson* v. *Department of Motor Vehicles,* 202 Conn.
453, 461, 521 A.2d 1040 (1987); *Ivey, Barnum &
O'Mara* v. *Indian Harbor Properties, Inc.,* 190 Conn.
528, 532, 461 A.2d 1369 (1983); *A & H Corporation* v.
*Bridgeport,* 180 Conn. 435, 443, 430 A.2d 25 (1980);
*Johnny Cake, Inc.* v. *Zoning Board of Appeals,* 180

Conn. 296, 301, 429 A.2d 883 (1980); C. Tait, Connect-
icut Appellate Practice and Procedure (1991) § 7.14.
We conclude that the trial court correctly concluded
that the board was authorized, under the subdivision
regulations, to consider historical factors when it acted
on the application.

In construing regulations, the general rules of statu-
tory construction apply. *Schwartz* v. *Planning & Zon-
ing Commission,* 208 Conn. 146, 153, 543 A.2d 1339
(1988) (applying rules of statutory construction to inter-
pretation of zoning regulations); see *Ghent* v. *Planning
Commission,* 219 Conn. 511, 518–19, 594 A.2d 5 (1991);
*Sonn* v. *Planning Commission,* 172 Conn. 156, 159–60,
374 A.2d 159 (1976). The commission is limited by the
power conferred upon it by the subdivision regulations.
See *Reed* v. *Planning & Zoning Commission,* 208 Conn.
431, 544 A.2d 1213 (1988) (planning commission cannot
exercise a power that has been admittedly delegated
to it, unless its own regulations give it the right to exer-
cise that power). Section 6-266 (a)[10] of the Greenwich

---

[10] Section 6-266 (a) of the Greenwich Land Use Regulations provides in
pertinent part: "The preliminary layout shall include as many of the fol-
lowing items of information as is practicable. . . .

"(19) For a subdivision of ten (10) lots or more or the subdivision of ten
(10) or more acres, an environmental assessment by qualified environmental
specialists shall be provided. The Commission may require said assessment
for smaller subdivisions if deemed necessary. The assessment shall include
an evaluation of the following:

"(a) Conformance with the Open Space Plan of Development
"(b) Significant wetlands
"(c) Steep Slopes
"(d) Stormwater Drainage
"(e) Soils capabilities
"(f) Vegetation including forested areas and the identification of trees
over 10″ in caliper when not part of forested areas
"(g) Significant geological formations
"(h) Historical and archaeological factors
"(i) Animal habitats
"(j) Water availability and quality

Land Use Regulations sets forth the information that should be included in a preliminary subdivision application. "The preliminary layout shall be considered as a helpful guide in the preparation of a subdivision plan and should include the information set out in Section 6-266." Greenwich Land Use Regs. § 6-265. Subsection (a) of § 6-266 states that "[t]he preliminary layout shall include as many of the following items of information as is practicable." This general statement, set forth at the beginning of the regulation, indicates the commission's intent to require only the information that is pertinent to a particular subdivision application.

Section 6-266 (a) (19)[11] permits the commission in its discretion to require an environmental assessment in the preliminary layout of subdivisions of fewer than ten lots or ten acres.[12] Subsection (a) (19) lists twelve relevant considerations, including "[h]istorical and archaeological factors." Greenwich Land Use Regs. § 6-266 (a) (19) (h). In this case, the commission requested an evaluation by the historic district commission of the historic implications of the subdivision application. It also requested an evaluation by the required experts of some of the other considerations listed in § 6-266 (a) (19). It did not request that each and every one of these items be evaluated, presumably because it did not see such a need.

The plaintiffs argue that § 6-266 does not apply because the commission did not formally request an

"(k) Aquifer protection in accordance with the Statutes of the State of Connecticut

"(l) Other data which the Commission deems appropriate.

"The environmental assessment shall be subject to a review, after the receipt of recommendations of the Conservation Commission, by the Planning and Zoning Commission including the mitigation measures for minimizing environmental impact before the applicant proceeds to final plan."

[11] See footnote 10 for the text of Greenwich Land Use Regs. § 6-266 (a) (19).

[12] The property comprises fewer than ten acres or ten lots.

"environmental assessment." The consequence of the plaintiffs' argument is that, unless the commission formally requests each item of information by calling it an "environmental assessment," the commission cannot consider potentially relevant information. We decline to accept such a narrow construction of the regulation.

Regulations are to be construed as a whole. *Forest Construction Co.* v. *Planning & Zoning Commission*, 155 Conn. 669, 679, 236 A.2d 917 (1967). There is nothing in § 6-266 (a) that specifically requires that the commission label its request for information an "environmental assessment." Rather, "environmental assessment" is a general label for the types of information that the commission is authorized to consider in its determination of subdivision applications. Further, the intent of the preliminary layout is to convey relevant information to the commission in order to facilitate the process. This intent is indicated by the overall description of what should be included in a layout in § 6-266 (a), which states that the "preliminary layout shall include as many of the following items of information as is practicable."

The plaintiffs further argue that the commission did not consider a full environmental assessment as required by the language of § 6-266 (a) (19), which states that "[t]he assessment *shall* include an evaluation of the following . . . ." (Emphasis added.) The plaintiffs contend that this regulation makes it mandatory that each of the twelve factors listed be included in an assessment of the property to be subdivided. We disagree.

Although subdivision (19) of § 6-266 (a) employs the word "shall," it does not make sense to require the commission to evaluate factors that are not relevant to a particular subdivision. Whether the word "shall" is

mandatory or precatory depends upon its context. See, e.g., *Caron* v. *Inland Wetlands & Watercourses Commission,* 222 Conn. 269, 273, 610 A.2d 584 (1992). In construction of the words of a regulation, like those of a statute, common sense must be used. *Police Department* v. *State Board of Labor Relations,* 225 Conn. 297, 303, 622 A.2d 1005 (1993). The items listed to be considered include some specific items that will not be implicated in every subdivision application. For example, in addition to historical and archaeological factors, the list includes animal habitats, significant geological formations and aquifer protection. Greenwich Land Use Regs. § 6-266 (a) (19) (g), (i) and (k). Not every subdivision application will require the consideration of each of these factors. It would be a waste of time, money and energy for the participants involved to be required to gather information that is not relevant to the subdivision application.

In addition, § 6-296 (d) of the Greenwich Land Use Regulations explicitly permits the commission to require a redesign of a subdivision plan "in order to protect environmental or historic resources" if the environmental assessment indicates the need for a redesign. Thus, the regulations specifically anticipate a situation, like the one at hand, where historical preservation requires the redesign of subdivision plans.

We also must look to the overall intent of the applicable regulations in considering subdivision applications. *Forest Construction Co.* v. *Planning & Zoning Commission,* supra. "Regulations, like statutes, do not exist in a vacuum." *Bombero* v. *Planning & Zoning Commission,* 218 Conn. 737, 743, 591 A.2d 390 (1991). As noted above, § 6-266 (a) requires the consideration of only that information that is necessary. Additionally, the purpose of the subdivision regulation is to "[f]urther the orderly development of the Town in accordance with the Town Plan of Development."

Greenwich Land Use Regs. § 6-260 (a) (1). Although, as noted above, the town plan cannot itself support the denial of a subdivision application, its provisions can serve as an interpretative guide to the meaning of properly enacted regulations. The plan has as one of its basic objectives the preservation of historic resources. The plan also provides that "Greenwich has a rich . . . historical heritage that should be protected for the benefit and enlightenment of future generations," and that "[c]onserving the Town's . . . historical resources is a notably effective land use tool for preserving the essential character and spirit of the community."

Accordingly, we conclude that § 6-266 (a) (19) (h) expressly permits the commission to consider historical factors.[13]

## II

The defendants next claim that the Appellate Court incorrectly concluded that the terms "historical factors" and "historic streetscapes" do not comply with the established rules requiring regulations to be reasonably precise, adequate and sufficient. We agree with the defendants.

The standard for determining the adequacy of subdivision regulations is whether they " 'are as reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations.' " *Nicoli* v. *Planning & Zoning Commission,* 171 Conn. 89, 93, 368 A.2d 24 (1976); *Forest Construction Co.* v. *Planning & Zoning Commission,*

[13] Because we conclude that the commission has authority under the charter and subdivision regulations to consider historical factors, we need not address whether the Coastal Area Management Act; General Statutes §§ 22a-90 through 22a-112; also allows the commission to consider historical factors.

supra, 680. Although some standards may be general, the regulation must be " 'reasonably sufficient to identify the criteria to be evaluated in their enforcement in order to meet the many variables involved since it would be impossible to establish one standard which would adequately cover all future cases.' " *Nicoli* v. *Planning & Zoning Commission,* supra, 93.

In this case, the commission's subdivision regulations sufficiently apprised the plaintiffs that historical factors would be considered in evaluating their subdivision application. In evaluating the regulations, we must construe them "as a whole since particular words or sections of the regulations, considered separately, may be 'lacking in precision of meaning to afford a standard sufficient to sustain' them." *Forest Construction Co.* v. *Planning & Zoning Commission,* supra, 679; *Ghent* v. *Planning Commission,* supra, 517; *Sonn* v. *Planning Commission,* supra, 162. Although § 6-266 (a) (19) does not specifically define the term historical factors, the general purpose of the regulations specifically references the town plan. Section 6-260 (a) (1) states that "[t]he purposes of this Article shall be to (1) [f]urther the orderly development of the Town in accordance with the Town Plan of Development." This reference puts prospective subdivision applicants on notice that the town plan will help define the specific terms in the subdivision regulations.

The plan has as one of its basic objectives "[t]o preserve historic and architectural resources." In its further discussion of the preservation of historical resources, the plan specifically mentions historical "streetscapes and districts" as important aspects of Greenwich that the town wishes to preserve. In a subsequent section, the plan states that "[t]he following considerations should be the starting point for decision-making . . . [t]he goal is to sustain a climate where . . . historic streetscapes can be preserved." These

specific references to streetscapes, the historical factor at issue in this case, define one aspect of "historical factors" and certainly apprised the plaintiffs that this would be a consideration in their subdivision application.

The consideration of historical factors does not occur in a vacuum. See *Bombero* v. *Planning & Zoning Commission,* supra. "It is unrealistic to demand detailed standards which are impracticable or impossible." *Forest Construction Co.* v. *Planning & Zoning Commission,* supra, 679. The term historic factors derives meaning from the physical environment of the historic district. See *A-S-P Associates* v. *Raleigh,* 298 N.C. 207, 223, 258 S.E.2d 444 (1979). In the context of a historic district, there are identifiable and sufficiently distinct historical standards by which the commission may be guided. These same characteristics also put property owners on notice of the types of historical factors that will be considered. "Although . . . discretion cannot be entirely eliminated because of the subjective nature of this process"; *Bellevue Shopping Center Associates* v. *Chase,* 574 A.2d 760, 764 (R.I. 1990); the board is confined to the relevant historic period in its consideration of historical factors.

Accordingly, we conclude that the standards set forth in the regulations and the plan are reasonably precise and sufficient to guide the commission. Accord *Maher* v. *New Orleans,* 516 F.2d 1051, 1067 (5th Cir. 1975), cert. denied, 426 U.S. 905, 96 S. Ct. 2225, 48 L. Ed. 2d 830 (1976); *Bellevue Shopping Center Associates* v. *Chase,* supra, 764–65; see generally *Burnham* v. *Planning & Zoning Commission,* 189 Conn. 261, 263–64, 455 A.2d 339 (1983); *Figarsky* v. *Historic District Commission,* supra, 207–209 (implicitly endorsing the adequacy of "historical factors" to guide municipal agencies and applicants); see also *Carlson* v. *Fisher,* 18 Conn. App. 488, 506–507, 558 A.2d 1029 (1989)

(referencing streetscape).[14] The Appellate Court was, therefore, incorrect in concluding that the regulations did not support the action taken by the commission.

## III

The defendants also challenge the Appellate Court's conclusion that "it is the duty of the historic district commission, not the planning and zoning commission or the board of appeals, to decide whether a building should be erected in a historic district." *Smith* v. *Zoning Board of Appeals,* 29 Conn. App. 28, 35, 614 A.2d 464 (1992). We disagree with the Appellate Court because we conclude that the historic district commission does not exercise exclusive statutory jurisdiction to rule on changes affecting the historic character of a historic district.

The historic district commission and the planning and zoning commission perform different yet sometimes overlapping functions. The historic district commission is authorized to make its own independent determination of whether a proposed building or alteration is consistent with the historic district. General Statutes § 7-147f. "Absent a statutory provision designating which commission is to have overriding responsibility, [however,] the fact that the legislature has given responsibility to more than one agency suggests that each must exercise its own authority, using its standards and procedures, regardless of what the other agencies do under their delegation of power from the state." T. Tondro, supra, p. 50. The General Statutes do not confer exclusive powers on the historic district commission. To the contrary, General Statutes

---

[14] The plaintiffs also argue that they have been deprived of their due process rights because the phrases historical factors and historic streetscape did not provide sufficient notice as to whether they could subdivide and build on their property. Our conclusion that "historical factors" and "historic streetscape" are reasonably precise terms, thereby putting the plaintiffs on adequate notice, disposes of this argument.

§ 7-147c (j) authorizes the historic district commission to cooperate with other regulatory agencies interested in preservation and to initiate planning and zoning proposals on their behalf. Moreover, we have recognized concurrent agency jurisdiction in other areas. See, e.g., *Wright* v. *Woodridge Lake Sewer District,* 218 Conn. 144, 147–48, 588 A.2d 176 (1991) (sewer and zoning agencies); *Mario* v. *Fairfield,* 217 Conn. 164, 169–70, 585 A.2d 87 (1991) (department of environmental protection and inland wetlands commission).

Accordingly, we conclude that the historic district commission's authorization to consider historical factors does not foreclose the commission from considering historical factors. The Appellate Court was mistaken in ruling to the contrary.

## IV

The defendants next argue that the Appellate Court incorrectly concluded that the board's consideration of the subdivision regulations improperly encroached upon the applicable zoning regulations. The plaintiffs claim, to the contrary, that because it is undisputed that the application conformed with the zoning requirements of an R-7 zone, it could not be denied on the basis of nonconformance with subdivision regulations. *Smith* v. *Zoning Board of Appeals,* supra, 37. We agree with the defendants.

Citing *Cristofaro* v. *Burlington,* 217 Conn. 103, 107, 584 A.2d 1168 (1991), the Appellate Court concluded that the commission lacked the authority "to include historical factors in its regulations" because "[s]ubdivision regulations cannot impose minimum lot size, shape, width and depth requirements greater than those required under the zoning regulations for the zone where the property is to be subdivided or deny approval of lots that meet all zoning requirements." *Smith* v. *Zoning Board of Appeals,* supra, 36. *Cristofaro,* how-

ever, is inapposite. In *Cristofaro,* the planning and zoning commission enacted a regulation that directly intruded on a subject that was exclusively a zoning matter. See *Avonside, Inc.* v. *Zoning & Planning Commission,* 153 Conn. 232, 238–39, 215 A.2d 409 (1965) (fees in subdivision regulations in excess of fees in zoning regulations invalid). A subdivision regulation may not conflict with applicable zoning regulations.[15]

Although subdivision regulations and zoning regulations have separate functions, landowners must comply with the requirements of each applicable regulation. *Vose* v. *Planning & Zoning Commission,* 171 Conn. 480, 483, 370 A.2d 1026 (1976); see *Cristofaro* v. *Burlington,* supra, 106; *Sheridan* v. *Planning Board,* 159 Conn. 1, 9, 266 A.2d 396 (1969). Only if the commission enacts subdivision regulations that exclusively concern zoning power, or if the subdivision regulations directly conflict with a zoning power, will the subdivision regulation be invalid. *Cristofaro* v. *Burlington,* supra, 107; *Avonside, Inc.* v. *Zoning & Planning Commission,* supra.

In this case, the subdivision regulations neither encroach upon an area that is uniquely a zoning power, nor directly conflict with applicable zoning regulations. As we discussed above, § 101 (d) of the charter permits the commission to enact regulations that consider historical factors. Although General Statutes § 8-2[16] authorized the zoning commission to enact zoning regulations that consider historical factors, the parties have

---

[15] General Statutes § 8-26 provides in pertinent part: "The commission shall have the authority to determine whether the existing division of any land constitutes a subdivision or resubdivision under the provisions of this chapter, provided nothing in this section shall be deemed to authorize the commission to approve any such subdivision or resubdivision which conflicts with applicable zoning regulations." See *Ferndale Dairy, Inc.* v. *Zoning Commission,* 148 Conn. 172, 176, 169 A.2d 268 (1961).

[16] General Statutes § 8-2 provides in pertinent part: "Zoning regulations may be made with reasonable consideration for the protection of historic factors . . . ."

not pointed to any zoning regulation that does so. The record therefore does not indicate any conflict between the pertinent subdivision regulations and any of the applicable zoning regulations.

Accordingly, the zoning regulations in this case do not prevent the board's review of historical factors in considering whether to grant or deny the plaintiffs' subdivision application. The Appellate Court was mistaken in relying on a conceived conflict of regulations as a ground for sustaining the plaintiffs' appeal.

V

Last, the plaintiffs argue, as an alternate ground for affirming the judgment of the Appellate Court, that the denial of their subdivision application results in an unconstitutional taking of their property without just compensation. Because the plaintiffs have not met their burden of proving that there are no viable options for the property, we conclude that this claim cannot be sustained.

The plaintiffs claim that the board's denial of their subdivision application was a practical confiscation of their land and that they have no viable alternatives. The board rejected the plaintiffs' contention, concluding that other alternatives for development of their land exist and that the plaintiffs therefore had not been deprived of their due process rights. Although the trial court acknowledged that the plaintiffs had advanced this argument, it did not resolve it and the plaintiffs did not ask the trial court to articulate its reasons for failing to do so.

The plaintiffs have the burden of proving that they have been finally deprived by the board of the use of their property. *Gil* v. *Inland Wetlands & Watercourses Agency,* 219 Conn. 404, 415, 593 A.2d 1368 (1991); *Bom-*

*bero* v. *Planning & Zoning Commission,* supra, 746; *Brecciaroli* v. *Commissioner of Environmental Protection,* 168 Conn. 349, 357, 362 A.2d 948 (1975). We have held that a final deprivation has occurred when there were no economically viable uses of the land; *Dooley* v. *Town Plan & Zoning Commission,* 151 Conn. 304, 311, 197 A.2d 770 (1964); see *Gil* v. *Inland Wetlands & Watercourses Agency,* supra; or there has been a practicable confiscation of the entire property.

In this case, the board found, as a matter of fact, that other viable options exist for the development of the plaintiffs' property. The board's rejection of the plaintiffs' subdivision application does not lead to the conclusion that other plans will be denied as well and the trial court has made no relevant findings to the contrary. " '[U]ntil it appears that the plaintiff[s] [have] been finally deprived . . . of the reasonable and proper use of the property, it cannot be said that there has been an unconstitutional taking of property without just compensation.' " *Luf* v. *Southbury,* 188 Conn. 336, 351–52, 449 A.2d 1001 (1982).[17] Consequently, we cannot conclude that there has been a taking. *Gil* v. *Inland Wetlands & Watercourses Agency,* supra; *Luf* v. *Southbury,* supra, 354; *Brecciaroli* v. *Commissioner of Environmental Protection,* supra, 358.[18]

---

[17] The plaintiffs refer to testimony by the board commissioner concerning the option of building condominiums on the property. On the basis of the commissioner's speculation that the historic district commission would not grant a certificate of appropriateness, the commissioner suggested that this option was not worth discussing. Contrary to the plaintiffs' contention, this testimony does not establish that the board believes that there are no viable alternatives.

[18] The plaintiffs also claim that the subdivision regulations have been unequally applied to them and throughout the historic district. The plaintiffs, however, only peripherally raised this claim before the board and never corroborated it with evidence. Because the record is insufficient, we decline to review this claim.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the trial court's judgment dismissing the plaintiffs' appeal.

In this opinion the other justices concurred.