[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff RJD Development LLC appeals the decision of the defendant planning and zoning commission of the town of Rocky CT Page 5898 Hill denying the plaintiff's application for approval of its plan of subdivision of certain property in the town. The commission acted pursuant to General Statutes § 8-25. The plaintiff appeals pursuant to § 8-8. The court finds the issues in favor of the plaintiff.
Following a hearing and the submission of evidence, the court finds that the plaintiff holds an option to purchase the property in question pursuant to a purchase and sale agreement between the plaintiff and the record owners of the three separate tracts that together will comprise the subdivision property. The agreement contemplates the subdivision which is under review in this case and provides that the agreement may be terminated if the subdivision is not approved. The agreement is currently in full force and effect. Based on those facts, the court finds that the plaintiff is aggrieved by the commission's decision disapproving the subdivision. See Fletcher v. Planning Zoning Commission,158 Conn. 497 (1969); Goldfield v. Planning Zoning Commission,3 Conn. App. 172, 176 (1985).
The facts essential to the court's decision are not in dispute and are fully reflected in the record. The property in question consists of 17.91 acres of undeveloped land lying westerly of a previously developed subdivision located on Bucks Crossing Road. The Bucks Crossing Road is a dead end road, approximately 1500 feet in length.
The plaintiff's application sought approval of the subdivision of its property into nine lots for single family residences, all abutting a proposed road to be called Hunter's Ridge. The proposed lots and residential use would comply with all zoning and wetland regulations. The proposed Hunter's Ridge Road would extend westerly from a stub on the Bucks Crossing Road, continue about 950 feet, and likewise end in a cul-de-sac, abutting property belonging to other owners not parties in this case. The existing stub on Bucks Crossing Road had originally been constructed with the permission of the town in contemplation of an eventual new road into a new development to the west. Both the plaintiff and the commission characterized the planned new cul-de-sac as "temporary" on the basis that the plaintiff desires ultimately to continue the road until it can connect to an existing town road. Such an extension would at least require obtaining easements from other property owners, and there is no evidence in the record as to whether or not this would be possible. CT Page 5899
The commission held a public hearing on the plaintiff's application. At the hearing, a representative of the plaintiff and a professional engineer retained by the plaintiff appeared in support of the application. The commission also had written statements concerning the proposed subdivision, including the new road, from the town's police, fire and health departments. There were some members of the public present, two of whom spoke in opposition.
Following the hearing, the commission met and voted to deny the application. The principal problems identified by the commission was the fact that the proposed new road would be a dead end road and that it would exceed the preferred length for such roads.
In other respects, the new road conformed to the requirements of the subdivision regulations.
The express basis of the commission's decision, as set forth in the motion which the commission adopted in denying approval, was that "this subdivision is an extension of an already extended cul-de-sac, exceeding the feet requirement normally approved by this commission, and that this leg off the cul-de-sac would not serve to preserve the welfare (and) safety of the community because of access to the specific site."
The plaintiff advances two arguments in support of its appeal to the court: (1) that the reasons given by the commission for denying the application are not supported by adequate evidence in the record and (2) that the regulation concerning the length of dead end roads does not provide any ascertainable standard and the commission enforced it arbitrarily and unfairly in. this case.
It is appropriate to set forth certain basic principles that govern all appeals before evaluating the plaintiffs' specific claims. Connecticut law limits the discretion of a planning commission in its consideration of a subdivision plan. In Baronv. Planning Zoning Commission, 22 Conn. App. 255, 256-257
(1990), the Appellate Court held:
In disposing of an application for a subdivision, the commission acts in an administrative capacity . . . In passing on subdivision plans, the CT Page 5900 commission is controlled by the regulations it has adopted, and, if the plans conform to the existing regulations, the commission has no discretion or choice but to approve them. . . .
 General Statutes 8-6 entrusts the commission with the function of interpreting and applying its zoning regulations . . . The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts . . . The plaintiffs have the burden of showing that the commission acted improperly . . . The trial court can sustain the plaintiff's appeal only upon a determination that the decision of the commission was unreasonable, arbitrary or illegal . . . It must not substitute its judgment for that of the zoning commission and must not disturb decisions of local commissions as long as honest judgment has been reasonably and fairly exercised. (Citations omitted.)
In DeMaria v. Planning Zoning Commission,159 Conn. 534, 541 (1970), the Supreme Court held:
 When a . . . commission states the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the . . . regulations. . . . [W]here a . . . commission has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission. It should not attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision.
These familiar principles require the court in this case to determine whether there is an adequate basis in the record to support the commission's decision.
As noted, the commission concluded that the new road "would CT Page 5901 not serve to preserve the welfare (and) safety of the community because of access to the specific site." The commission concluded, in other words, that the new road would have some negative impact on the welfare and safety of the community. More specifically, then, the court must determine whether the record supports this conclusion. In the court's view, there is little evidence of substance, if any, that would lend such support.
With respect to public safety, the record discloses that the police, fire and health departments of the town issued written approvals of the project. In particular, the police department commented, "There appear to be no police or traffic related concerns with this proposal." The fire department was concerned only that proper fire hydrants be installed, a condition that would be met by the plaintiff's plans.
With respect to the public "welfare," the commission's decision, as expressed, does not indicate what specific concerns it had. Further review of the record, however, especially that pertaining to the commission members' discussions immediately preceding the vote, indicates that their major concern was that the inclusion of a dead end road in the project would be contrary to long range plans for development of that part of town. As one of the commissioner's put it, We're (creating) a pattern of streets which are not in what I consider to be a proper planning process as to basically have legs coming off of cul-de-sacs. And to set that as a policy is incorrect for a planning commission to approve . . . I don't think it's proper planning." The discussion continued with another commissioner observing that the area has been developed in a "hodgepodge" way during the fourteen years since the last formal plan of development was approved with the result that the remaining buildable land is not "conducive to putting roads through to anywhere unless several builders consolidate their plans and come up with some sort of comprehensive plan. . . ."
Although the commission members plainly disfavored the plaintiff's subdivision plan because of its inclusion of a dead end road which branches off another dead end road, they did not point to any specific provision of the subdivision regulations that prohibit such a configuration, and no such prohibition appears to exist. Indeed, the zoning map of the town, which is in the record, shows several such road patterns already in existence nearby. CT Page 5902
In reviewing an application for a plan of subdivision, a planning commission must focus on its subdivision regulations and give relatively limited consideration to the town's long range plan of development In Smith v. Zoning Board of Appeals,227 Conn. 71, 87-88 (1993), the Supreme Court summarized the rule that "a town plan is merely advisory. . . . Because the overall objectives contained in the town plan must be implemented by the enactment of specific regulations, the plan itself can operate only as an interpretive tool." The court went on to hold in that case that the board had incorrectly denied a subdivision on the basis that it was inconsistent with the town plan.
In the present case, the town plan was not made part of the record, so there is no evidentiary support for the commission's view that the plan disfavors dead end streets in the part of town in question. Certainly, there is no evidence of specific conflict between the plaintiff's plan of subdivision and the town plan of development. At most, there is the commission members' — generalized assertion that the proposed street layout would not be "proper planning." For all of the reasons set forth above, the court concludes that the commission's reliance on the town plan or on long range planning concepts in general as justification for denying the subdivision was not legitimate.
Finally, the commission's decision indicated that it was based, in part, on the length of the proposed new road as "exceeding the feet requirement normally approved by this commission." In this connection, section 7E of the Rocky Hill Subdivision Regulations provides, in relevant part, as follows:
 Where cul-de-sac streets are unavoidably included in a subdivision they shall generally not exceed 600 feet in length. . . .
The plaintiff argues that this regulation is insufficiently precise and that the commission arbitrarily and unreasonably enforced it in this case. The court agrees.
"The standard for determining the adequacy of subdivision regulations is whether they are as reasonably precise as the subject matter requires and are reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations." (Citations and internal quotation marks omitted.) Smith v. Zoning Board of Appeals, supra, 227 Conn. 93. Subdivision regulations — "must contain CT Page 5903 known and fixed standards applying to all cases of a like nature, and must conform to the principle that a regulation, like a statute, cannot be too general in its terms." Sonn v. PlanningCommission, 172 Conn. 156, 161 (1976). This requirement "reduces the likelihood of an administrative body . . . acting in a capricious manner in the exercise of its authority." Id. "Adequate, fixed and sufficient standards . . . must be delineated in (the) regulations so as to avoid decisions, affecting the rights of property owners, which would otherwise be a purely arbitrary choice of the commission." Id., 162.
In the Sonn case, supra, the court disapproved a regulation which provided "Except in cases of unusual topography or property lines, through lots bounding on two generally parallel streets will not be permitted." The court held that the words" "unusual topography or property lines' give broad, almost unfettered, authority to the planning commission. . . ." Sonn v. PlanningCommission, supra 172 Conn. 160.
In the regulation in question in the present case, section 7E, the word "generally," standing alone, unmodified by any guiding criteria, gives even broader authority to the commission than did the comparable words struck down in Sonn. In particular, section 7E gives no guidance to the commission as to the circumstances under which the commission should either permit or prohibit dead end streets which exceed 600 feet in length. It likewise fails to inform property owners of their rights and obligations with any meaningful degree of specificity.
The lack of any ascertainable mandatory guidelines in the regulation virtually invites arbitrary decisions, based only on the personal opinions of the members of the commission at any given time. Such unfettered discretion is perhaps illustrated by the myriad dead end streets exceeding 600 feet in length which have been previously approved in the town, as shown on the zoning map in the record. In the present case, the commission members were plainly acting in good faith but, just as plainly, were groping for some specific criteria to add to the vague, unhelpful standard that they had in the regulation. As noted, the criteria that the commission used to give meaning to the word "generally" — public safety, long range. planning concepts — found no support in the record or in the law.
Since there is no support in the record or in the subdivision regulations for the commission's decision, it may not be CT Page 5904 affirmed. The plaintiff's appeal is, therefore, sustained
MALONEY, J.