[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Statement of the Case
The plaintiff, John Segerson, is appealing pursuant to General Statutes, Sec. 22a-43 from the decision of the defendant, Redding Conservation Commission ("Commission"), denying the plaintiff's application both to construct a house, septic system, and driveway within the limits of inland wetlands and to relocate an existing water course. This application is his fourth.
II. Procedural History
On January 27, 1994, the Commission published its final decision on the plaintiff's application in The Redding Pilot. On February 10, 1994, the plaintiff served the Commission by causing a true and attested copy of the complaint and summons to be left in hand with the Redding Town Clerk and David Pattee, Chair of the Commission. Also February 10, 1994, pursuant to General Statutes, Sec. 22a43(a), the plaintiff served Timothy Keenan, "Commission [sic] of the Department of Environmental [sic] Protection" ("DEP commissioner"), with a true and attested copy of the complaint and summons.
On March 15, 1994, this appeal was filed in the Superior Court, Judicial District of Danbury. The plaintiff has alleged aggrievement. The plaintiff has alleged that the Commission's denial of the plaintiff's application was illegal, arbitrary and an abuse of discretion — derived from the Commissioner's conflict of interest and constituting a taking of the plaintiff's property.
III. Facts
The subject of the plaintiff's current application, which was denied, is an unimproved, landlocked, 0.906 acre parcel located in Redding. The plaintiff's parcel is bisected by a stream approximately 5 feet wide, flowing to the northeast and entering the southwest corner of the parcel. One-third of the parcel, the CT Page 286 southeastern corner beneath the stream, consists of wetlands and the stream.
The parcel is the third lot in a row of four lots, lined north to south, created by a 1920's subdivision. Only the first, most northerly, of the four lots is improved and has access to Dayton Road, which runs east to west. A 40 foot right-of-way, running north to south, extends along the easterly edge of the four lots, reaching on the north Dayton Road and on the south the westernmost dog-leg extension of a parcel known as the "Pinchbeck parcel." The eastern and southern edge of the lots are bordered by the remainder of the Pinchbeck parcel.
The Pinchbeck parcel is a 6.87 acre parcel of unimproved wetlands owned by an organization known as the Redding Land Trust. The Redding Land Trust maintains a trail ("the Pinchbeck trail") over the right-of-way to provide access to an open space area known as the Devil's Den. The Pinchbeck trail passes over the right-of-way claimed by the plaintiff. The stream that extends through the plaintiff's parcel also bisects diagonally through the right-of-way, and then turns northward and runs directly along the eastern section of the right-of-way. A substantial portion of the right-of-way is wetlands.
In deciding the plaintiff's application, the Redding Conservation Commission acts in its capacity as the Redding Inland Wetlands Agency pursuant to General Statutes, Sec. 22a-42.
The plaintiff purchased the parcel on September 8, 1992; after having twice unsuccessfully applied, as a contract purchaser, to the Commission to conduct regulated activities on the parcel consisting of constructing a driveway over the right-of-way and either a house or storage structure on the property.
The plaintiff submitted a third application after purchasing the parcel on September 8, 1992. This application was denied on May 4, 1993. The plaintiff appealed from the denial of the application. Segerson v. Conservation Commission of the Town ofRedding, Superior Court, Judicial District of Danbury, Docket No. 31 37 17 (April 26, 1994, Mihalakos, J.). The Superior Court upheld the denial and dismissed the appeal on April 26, 1994. Id.
On July 16, 1993, the plaintiff submitted the present application, before the Superior Court issued its decision regarding the third application. The application consists of CT Page 287 three alternate plans: A, B and C. The Commission agreed to hear the plaintiff's fourth application despite the pending appeal with respect to the third application.
The plaintiff's current application seeks a license from the Commission to construct a 400 foot driveway over the right-of-way, of which approximately 360 feet is to be constructed directly on wetlands. The plaintiff further seeks to relocate approximately 100 linear feet of the existing stream running through the eastern edge of the parcel and the right-of-way, in order to make way for the driveway. In addition, the plaintiff seeks permission to construct — within 150 feet of wetland areas — a two bedroom house with no garage and a 945 square foot footprint (amount of ground covered), a three bedroom septic system, a pump station (if the Commission so desires), and leaching fields.
To avoid relocating the stream, the plaintiff tried to purchase the lot next to his from the conservators of a Mrs. Crane and to gain an easement from them. The Redding Land Trust sought to have her donate the lot to them so it could grant the plaintiff an easement. All efforts failed.
A public hearing was conducted on the plaintiff's application. The Commission received several engineering and environmental reports, as well as the testimony of various town residents, including two notices of intervention from one resident and neighbors of the plaintiff's property.
On January 18, 1994, the Commission voted to deny plaintiff's application, with one member abstaining. The Commission expressed the following reasons for the denial:
 Barbara Obeda's report entitled "Points to Ponder"; Jim MacBroom's Memorandum of October 15, 1993;
 Sections of the Redding Inland Wetland and Watercourses Regulations, specifically 7.2(a), 7.2(c), 7.3(a), 7.3(c), 7.3(f), 7.3(h), and 7.6(c); and,
 Section 4.11 of the Redding Inland Wetland and Watercourses Regulations.
IV. Jurisdiction
CT Page 288
A. Aggrievement
General Statutes, Sec. 22a-43 sets forth the requirements of aggrievement in inland wetland appeals. Aggrievement is a jurisdictional question. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991). "Unless the plaintiff alleges and proves aggrievement, his case must be dismissed. . . . Aggrievement presents a question of fact for the trial court." (Citation omitted.) Fuller v. Planning Zoning Commission, 21 Conn. App. 340, 343, 573 A.2d 1222 (1990). The owner of the property subject to the application appealed from is aggrieved. Bossert Corporation v. Norwalk, 157 Conn. 279,285, 253 A.2d 39 (1968); see Winchester Woods Associates v.Planning Zoning Commission, supra, 308; Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 530, 525 A.2d 940 (1987).
In the present case, the plaintiff alleges aggrievement by stating that "he is the owner of the real property which is the subject of the decision of the Commission which is appealed herein . . . and has a specific, personal and legal interest in the Commission's decision which has been specifically and injuriously affected by such decision." (Plaintiff's Appeal, par. 9.) The court may also rely on record evidence to make its finding of aggrievement. Hall v. Planning Commission,181 Conn. 442, 444-45, 435 A.2d 975 (1980). The record includes a warranty deed. The court finds that the plaintiff is aggrieved.
B. Timeliness
General Statutes, Sec. 22a-43 (a) states, in pertinent part, that "any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality . . . may, within thetime specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action, appeal to the superior court for the judicial district where the land affected is located. . . . Notice of such appeal shall be served upon the inland wetlands agency and the commissioner." (Emphasis added.)
General Statutes, Sec. 8-8(b) states that an appeal is commenced by service of process. The aggrieved party must commence service of process "within fifteen days from the date that notice of the [commission's] decision was published. . . ." General Statutes, Sec. 8-8(b). General Statutes, Sec. 8-8(b), by CT Page 289 referencing section 8-8(e), directs that service of process shall be made "by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." General Statutes, Sec. 8-8(e).
On January 27, 1994, the Commission published its final decision on the plaintiff's application in The Redding Pilot. On February 10, 1994, the sheriff left a true and attested copy of the process at the usual place of abode of David Pattee, Chair of the Commission; served a true and attested copy of the process on the town clerk; and served a true and attested copy of the process on Timothy Keenan, "Commission [sic] of the Department of Environmental [sic] Protection." (Sheriff's return.) The plaintiff's appeal was served within the fifteen day period required by General Statutes, Sec. 8-8(b) and to the necessary persons. Therefore, the appeal is timely.
VI. Scope of Review
"The plaintiff's burden, in challenging the action of the [inland wetlands] agency in denying the application, is to show that the agency acted arbitrarily, illegally or that the decision is not reasonably supported by the evidence. Lovejoy v. WaterResources Commission, 165 Conn. 224, 228-29, 332 A.2d 108
(1973)." Madrid Corporation v. Inland Wetlands Agency,25 Conn. App. 446, 449, 594 A.2d 1037, cert. denied, 220 Conn. 915,597 A.2d 334 (1991). In reviewing an administrative agency's decision, the trial court may not substitute its judgment for that of the administrative tribunal. Frito-Lay Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-73, 538 A.2d 1039 (1988). The review of a decision of an inland wetlands commission is limited to the record. Gagnon v. Inland Wetlands WatercoursesCommission, 213 Conn. 604, 609, 569 A.2d 1094 (1990); Huck v.Inland Wetlands Watercourses Agency, supra, 539; MadridCorporation v. Inland Wetlands Agency, supra, 449. The reviewing court is required to search the record for reasons to support the agency's decision; it is not required to articulate them. (Emphasis added.) Madrid Corporation v. Inland Wetlands Agency,
supra, 448; see Gagnon v. Inland Wetlands WatercoursesCommission, supra, 609, quoting Kaeser v. Conservation Commission,20 Conn. App. 309, 312, 567 A.2d 383 (1989).
Connecticut's Supreme Court has established the proper standard of review for a trial court hearing the appeal of an CT Page 290 inland wetlands agency's decision pursuant to General Statutes, Sec. 22a-43: "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. [Citations omitted.] The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. [Citations omitted.] . . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. [Citations omitted.] We have said that an administrative agency is not required to believe any witness, even an expert, nor is it required to use in any particular fashion any of the materials presented to it so long as the conduct of the hearing is fundamentally fair." (Citations omitted; internal quotation marks omitted.) Huck v. Inland Wetlands Watercourses Agency, supra, 539-42; see also Madrid Corporation v. Inland Wetlands Agency,
supra, 448.
"If none of the reasons given is properly supported by substantial evidence, then the defendant's denial must be overturned. Substantial evidence will be found to exist, however, if the record affords a substantial basis from which the fact in issue can reasonably be inferred." Madrid Corporation v. InlandWetlands Agency, supra, 448. "The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached."DeBeradinis v. Zoning Commission, 228 Conn. 187, 198-99,635 A.2d 1220 (1994) (citing Huck v. Inland Wetlands WatercoursesAgency).
VII. Merits of the Appeal
The plaintiff offers the following grounds in support of the appeal:
First, the plaintiff argues that the denial was illegal, arbitrary and an abuse of discretion because, individually and collectively, the Commissioners had a conflict of interest in the outcome of the decision and should have disqualified themselves from hearing and acting upon the application.
Second, the plaintiff argues that the Commission acted CT Page 291 illegally, arbitrarily and in abuse of its discretion because the decision is unsupported by the record.
Third, the plaintiff argues the denial was illegal, arbitrary and an abuse of discretion because it constituted an unlawful taking of the plaintiff's property without just compensation.
A. Conflict of Interest
The plaintiff argues that the decision of the Commission was illegal, arbitrary and an abuse of discretion because a conflict of interest existed between the Commissioners and the Redding Land Trust, owner of the neighboring Pinchbeck parcel and in charge of maintaining the Pinchbeck trail.
The defendant proposes that the conflict of interest allegations are issue precluded. Issue preclusion, or collateral estoppel, "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action"; (emphasis added) Mulligan v. Rioux, 229 Conn. 716, 751, ___ A.2d ___ (1994); "between the same parties upon a different claim." Jackson v. R. G. Whipple, Inc., 225 Conn. 705, 714,627 A.2d 374 (1993). For an issue to be precluded, it "must have been fully and fairly litigated in the first action . . . . actually decided . . . and the decision must have been necessary to the judgment." Mulligan v. Rioux, supra.
"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." (Internal quotation marks omitted.) CarolManagement Corp. v. Board of Tax Review, 228 Conn. 23, 32,633 A.2d 1368 (1993). "An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." (Internal quotation marks omitted.) Id., 33. "If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." Crochiere v.Board of Education, 227 Conn. 333, 343, 630 A.2d 1027 (1993).
In his appeal from the Commission's denial of his third application, the plaintiff essentially alleged the same conflict of interest allegations as he advances in the present appeal, and that any differences between the allegations are not substantive. The court determined the plaintiff's conflict of interest claims in the context of the former appeal. The court stated that "[t]he CT Page 292 record contains substantial evidence that the decision of the Commission was based solely on its concerns for proper wetlands management. The plaintiff has clearly failed to sustain his position that various conflicts existed and that those conflicts affected the Commission's decision." Segerson v. ConservationCommission of the Town of Redding, supra, Docket No. 31 37 17. General Statutes, Sec. 22a-42(c) dictates that: "[n]o member or alternate member of . . . [any inland wetlands agency] shall participate in the hearing or decision of such board or commission of which he is a member upon any matter in which he is directly or indirectly interested in a personal or financial sense."
Personal interest has been defined in the context of a zoning appeal as: "either an interest in the subject matter or a relationship with the parties before the . . . [decision-making body] impairing the impartiality expected to characterize each member of the [decision-making body]. A personal interest can take the form of favoritism toward one party or hostility toward the opposing party; it is a personal bias or prejudice which imperils the open-mindedness and sense of fairness which a . . . [decision-making] official in our state is required to possess."Anderson v. Zoning Commission, 157 Conn. 285, 290-91, 253 A.2d 16
(1968).
"The decision as to whether a particular interest is sufficient to disqualify . . . is necessarily a factual one and depends upon the circumstances of the particular case."Cioffoletti v. Planning Zoning Commission, 209 Conn. 544, 554,552 A.2d 796 (1989); Keiser v. Redding Conservation Commission,
Superior Court, Judicial District of Danbury, Docket No. 31 42 06 July 11, 1994, Riefberg, J.) (discussing commission member David Pattee's alleged conflict of interest as Chairman of the Conservation Commission and a member of the Redding Water Pollution Control Commission (WPCC)); see also Gaynor-StaffordIndustries Inc. v. Water Pollution Control Authority, 192 Conn. 638,650, 474 A.2d 752, cert. denied, 469 U.S. 932,105 S.Ct. 328, 83 L.Ed.2d 265 (1984). "The test is not whether the personal interest does, in fact, conflict, but whether it reasonably might conflict." (Citations omitted; internal quotation marks omitted.) Id., 648. The trial court is entitled to hear evidence and assess the credibility of witnesses in order to determine whether a particular interest of a commissioner or board member should have warranted disqualification. Cioffoletti v. Planning ZoningCommission, supra, 554. CT Page 293
1. Membership in the Redding Land Trust
The plaintiff argues that the membership of the individual commissioners in the Redding Land Trust constitutes a personal conflict. He maintains that by virtue of their membership or alleged membership with the Redding Land Trust, the commissioners owed an "allegiance" or duty to the Redding Land Trust that conflicted with their duty as members of the wetlands agency. (Plaintiff's Statement of the Case and Proceedings, p. 12.) The plaintiff contends that their duties to the public conflict with their allegiance to the Redding Land Trust and that this conflict creates, "at the very least, an appearance of impropriety requiring disqualification." (Plaintiff's Statement of the Case and Proceedings, p. 12.)
In response to the plaintiff's conflict of interest argument in his last appeal, this court emphasized that "[t]he record does not indicate that the commissioners were trustees or had an ownership interest in the Land Trust at the time of the hearing. Neither does that record indicate what membership in the Land Trust entails. Anyone can become a member by paying a $5 fee."Segerson v. Conservation Commission of the Town of Redding,
supra, Docket No. 31 37 17. Similarly, the present record contains no evidence that the Commissioners were trustees or had an ownership interest in the property of the Redding Land Trust at the time of the hearing on the present application and no evidence of what membership in the Redding Land Trust entails.
2. Commissioner Hill's Special Conflict
The plaintiff also argues that Commissioner Hill had a special conflict that should have forced him to disqualify himself. The court found this argument "equally unpersuasive" on the plaintiff's last appeal. Segerson v. Conservation Commissionof the Town of Redding, supra, Docket No. 31 37 17.
The plaintiff notes that Commissioner Hill encouraged the town, at one point, to purchase Pinchbeck parcel as open space. The plaintiff emphasizes that Commissioner Hill is a director of Redding Open Lands, Inc., stating that he was Chairman of the Redding Conservation Commission); that he donated development rights to 288 acres to the Redding Land Trust; and that he moved to deny the plaintiff's application. Based on these observations, the plaintiff maintains that the court should draw inferences of CT Page 294 special bias and personal interest. However, the plaintiff has failed to offer any evidence "to show the existence of a fact or set of facts that might reasonably be viewed as having an improper influence on" Commissioner Hill. Gaynor-StaffordIndustries, Inc. v. Water Pollution Control Authority, supra, 650-51 (stating the litigant's burden in requesting disqualification of a commissioner and holding that a zoning commissioner's membership in an association opposed to an applicant's request is not grounds for disqualification).
3. The Commission and the Redding Land Trust
The plaintiff further argues that the Commission, itself, has a conflict of interest with regard to the Redding Land Trust because the Commission has a special relationship with the Redding Land Trust, and because the Redding Land Trust manages Redding's open space lands and trails. The plaintiff contends that the Commission's dual role — not only as an inland wetlands agency in charge of regulating certain activities affecting wetlands and watercourses but also as a conservation commission responsible for preserving and managing Redding's open spaces — constitutes a conflict.
General Statutes, Sec. 22a-42(c) authorizes the Commission to act as an inland wetlands agency. Section 22a-42(c) provides that "each municipality shall establish an inland wetlands agencyor authorize an existing board or commission to carry out the provisions of . . . [the Inland Wetlands and Watercourses Act]." (Emphasis added.)
The Commission, in its capacity as an inland wetlands agency pursuant to General Statutes, Sec. 22a-42(c), has a duty to consider only those factors, as set forth in General Statutes, Sec. 22a-41, which affect wetlands or watercourses located within its territorial limits and then to grant, deny, or limit any permit for a regulated activity. Connecticut Fund for theEnvironment Inc. v. Stamford, 192 Conn. 247, 250, 470 A.2d 1214
(1984). There is a strong presumption of regularity in the proceedings of a public body such as a municipal land regulatory body. Murach v. Planning Zoning Commission, 196 Conn. 192, 205,491 A.2d 1058 (1985). "[A] reasonable appearance of impropriety . . . the standard for judicial disqualification, is not the governing standard for administrative adjudicators."Carnese v. Planning Zoning Commission, Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 29 99 69 (July 7, CT Page 295 1993, Levin, J.). "[A] rarefied atmosphere of impartiality cannot practically be achieved where the persons acting as administrative adjudicators, whose decisions are normally subject to judicial review, often have other employment or associations in the community they serve. It would be difficult to find competent people willing to serve, commonly without recompense, upon the numerous boards and commissions in this state if any connection with such agencies, however remotely related to the matters they are called upon to decide, were deemed to disqualify them." Petrowski v. Norwich Free Academy, 199 Conn. 231, 238,506 A.2d 139, appeal dismissed, 479 U.S. 882, 107 S.Ct. 42,93 L.Ed.2d 5 (1986).
The plaintiff has failed to point to any evidence in the record to show the existence of a fact or set of facts that might reasonably be viewed as having an improper influence on the Commission's activities as an inland wetlands agency.
In conclusion, the court finds that the plaintiff has failed to sustain his burden of proof on his claim that various conflicts of interest existed between the Commission, the individual commissioners, and the Redding Land Trust.
B. Denial Unsupported In Record
 1. James MacBroom's Memorandum of October 15, 1993
The plaintiff further appeals on the ground that the Commission's decision is illegal, arbitrary, and an abuse of discretion because the decision is unsupported by the record. The plaintiff argues that the Commission improperly relies upon an engineering consultant's James MacBroom) memorandum of October 15, 1993, which supplements his memorandum of October 1, 1993, which follows up on his original response to the application on September 3, 1993. The Commission cited the October 15, 1993 memorandum as a reason for denying the plaintiff's application.
Recalling the scope of review, supra, "[t]he agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial." (Citations omitted.) Huck v. InlandWetlands Watercourses Agency, supra, 539-40. "[E]vidence is sufficient to sustain an agency finding if it affords `a substantial basis of fact from which the fact in issue can be CT Page 296 reasonably inferred.'" Id., 541. The substantial evidence rule "imposes an important limitation on the power of the courts to overturn a decision of an administrative agency." Id.
In the October 15, 1993, memorandum, MacBroom concluded that "[t]he applicant has made a reasonable effort to reduce the impact of the proposed project. . . . However, the combined impact [of all the elements of the project] is locally significant and essentially unavoidable." He stated that "the project has significant local impact, [but] the overall effect on the stream system is minor." As part of his evaluation, he stated that the Bridgeport Hydraulic Company and the Nature Conservancy had dedicated upstream and downstream land as open space.
The Commission did "take exception to Jim MacBroom's statement" that Bridgeport Hydraulic Company's land is open space when assessing his report. There was testimony that there are no deed restrictions on Bridgeport Hydraulic Company's land and that some of the land is privately held, thus without deed restrictions. There was testimony that Bridgeport Hydraulic Company's land is open space by statute. General Statutes, Sec.25-32(b) describes the process for changes in the use of watershed land.[1]
Commissioner Hill stated that the Bridgeport Hydraulic Company "would clearly love to get the law changed" to develop "many hundreds of acres"; and had tried eight to ten times to do so. He added that "at the present time it [Bridgeport Hydraulic Company] can't — well, who knows at some time in the future it might and might use this as a precedent to — for high intensity development."
The Commission disagreed with or, at the very least, questioned its own consultant's presumption. This Commission was entitled to do. See Huck v. Inland Wetlands WatercoursesAgency, supra, 539-42 (stating that an administrative agency is not required to believe any witness, even an expert so long as the conduct of the hearing is fundamentally fair). The Commission's disbelief of MacBroom's premise that the land could not be developed did not prevent the hearing from being fundamentally fair. In light of MacBroom's finding that the plan was "locally significant," the Commission was entitled to use MacBroom's October 15, 1993, memorandum to deny the plaintiff's application. CT Page 297
MacBroom's memorandum regarding the third application[2]
and earlier memoranda regarding the fourth application contain many of the same points. Regarding the fourth application, MacBroom's memoranda of September 7, 1993, pointed out improvements from the third application in the plan and placement of the house, house fixtures, and driveway terminus and graded area. He sets out facts that are the same in the fourth application as in the third application such as identical wetlands impact in the right-of-way; no use of floating drains; and a desire to minimize vegetation clearing. He also found a continued lack of both soil erosion control and driveway runoff provisions, unsatisfactory vegetation clearance markings on the plan, and an absence of the actual groundwater data collected.
The plaintiff responded by submitting data and supplying a new, properly marked plan. He agreed to slope the driveway in whatever manner the Commission's engineer desired; however, he seems to state that there is a trade-off between achieving the most desirable grade or the most desirable slope.
In his response to the plaintiff's response, dated October 1, 1993, MacBroom lists six suggestions for improving erosion control, advocates a cross slope for the driveway, wants to prohibit use of fertilizers, seeks to have displaced vegetation replaced with similar species, and requests stepping stones for pedestrians along the new stream channel. It appears to this court that these are valid requirements for the Commission to impose upon a regulated activity on the land.
The plaintiff specified his agreement with most of MacBroom's recommendations and improved his application. Further, he failed to address adequately the engineer's concerns regarding erosion and driveway runoff.
The plaintiff's engineering consultant submitted three reports to the Commission, all dated November 11, 1993. The plaintiff's engineering consultant conducted a Renovation Analysis of Nitrogen for a three bedroom house showing that the "effluent will not have any negative impact on the water quality" (emphasis in original); monitored the groundwater on the property and submitted findings of "dry" pipes for a five month period; and prepared an "Erosion and Sedimentation Control Plan" describing the construction and the efforts to be made to minimize impact, including seeding plans for disturbed areas. CT Page 298
2. Barbara Obeda's "Points to Ponder"
The plaintiff argues that "Points to Ponder," written by the Commission's environmental consultant, Barbara Obeda, is also an invalid reason for denying his application, because it was submitted too late. "Points to Ponder" is dated December 26, 1993, after the close of the public hearing and after his lawyer's requests for copies of all the Commission's consultants' reports and notice of any new concerns. The Commission argues that Obeda's report did not include, nor was based, on "any fact or evidence that was not previously presented at the public hearing in the matter." Norooz v. Inland Wetlands Agency,26 Conn. App. 564, 573-74, 602 A.2d 613 (1992). "[T]he Commission may rely on the independent work of its staff and consultants following the close of the public hearing." Lenart v. City of NewHaven, Superior Court, Judicial District of New Haven, Docket No. 35 14 11 (February 18, 1994, Booth, J.). There is nothing new in Obeda's report to prohibit the Commission's use of it.
The plaintiff also argues that "Points to Ponder" is an invalid reason for denying his application because it is unsupported by the record. "Points to Ponder" lists ten points. Number 1 does not even mention the application; it merely states that each wetland is unique. Number 2 charges that the driveway plan is unchanged from the plaintiff's third application. Number 3 charges that the proposed driveway culverts will increase or decrease the amount of water in areas within the wetland. Number 4 states that the plaintiff's lawyer has submitted only excerpts favoring his claim instead of complete transcripts of meetings. Number 5 states that the watercourse is important to the local drainage basin; that straightening and lengthening the stream channel will increase the stream's velocity; and that, after the driveway is built, water will flow through filter fabric and rock. Number 6 repeats that the driveway will be built in wetlands or in regulated buffer area. Number 7 states that the denial of the plaintiff's third application is pending in court and not properly before the Commission. (This refers to section 4.11 of the Commission's regulations. The regulations are discussed fully infra.) Number 8 criticizes the plaintiff for submitting three variations in the placement of the house but does not criticize any of the plans themselves. Number 9 criticizes the plaintiff for submitting to the Commission materials used in pursuing his third application and names sections 4.11, 7.2, 7.6, and 7.7 of the Regulations as applicable. Section 4.11 is a procedural rule, distinct from CT Page 299 Obeda's expertise as an environmental consultant. Number 10 asks that any other report she has made regarding the plaintiff's fourth application be made part of "Points to Ponder."
"Points to Ponder" makes obvious statements, such as the fact that the driveway will be built, in part, in wetlands, and statements outside an environmental consultant's role, such as the appropriateness of the Commission's reviewing the application while an appeal on a former application is pending. "Points to Ponder" contains no supporting documentation and no data about any projected harmful effect of the plaintiff's proposed activity.
Obeda incorporated previous documents into "Points to Ponder." Her memorandum and chart of September 16, 1993, analyze the concept of the plaintiff's overall plan and compare the three alternative plans submitted. Obeda states facts about the plaintiff's proposed plans and describes his maps. Portions of her memorandum and comparison chart do raise valid concerns for the Commission: the driveway run-off, the alleged need to choose between a longer stream channel and more vegetative buffer, and the use of fill. On the other hand, "Points to Ponder" raises many other issues that are not substantial: a missing mark on two plans may be drawn, the number of bedrooms may be stipulated, the size of the septic system may be settled,[3] and the potential existence and (if so) use of low flow appliances may be investigated.
In conclusion, while not all of the factors presented by Obeda provide a basis for upholding the Commissioners' decision, the court is able to find some factors in Obeda's report upon which to uphold the Commission's denial of the plaintiff's application.
3. Inland Wetland Regulations
The plaintiff argues that the Commission's decision is not supported by the record where it relies either on the regulations or on his alleged failure to meet the criteria of the regulations. (Plaintiff's Statement of the Case and Proceedings, pp. 24, 26.) The regulations are the Inland Wetlands and Watercourses Regulations of the Town of Redding, Connecticut. The plaintiff calls the Commission's apparent reliance on the regulations "a weak attempt to bootstrap a denial otherwise lacking legitimacy." CT Page 300
The Commission cites section 4.11 of its regulations as a reason to deny the application. Section 4.11 allows the Commission to deny an application if an application for the same regulated activity is pending on appeal. The Commission made a conscious decision, with the advice of counsel, to accept and decide the plaintiff's application when it knew that he had an appeal pending. Although there is no relevant case law, it appears that the Commission's use of section 4.11 to deny the application was improper. This, however, is not fatal to the Commission's position in this matter.
The Commission lists sections 7.2(a), 7.2(c), 7.3(a), 7.3(c), 7.3(f), 7.3(h), and 7.6(c) as reasons to deny the plaintiff's application. Section 7.2(a) advocates alternatives to lessen adverse environmental effects; 7.2(c) warns against irreversible and irretrievable commitments of resources that may destroy inland wetlands; 7.3(a) is concerned with the ability of the area to handle water as before; 7.3(c) is concerned with erosion; 7.3(f) is concerned with changes in a waterway; 7.3(h) is concerned with changes to the water or soil; and 7.6(c) states that the Commission "shall not grant a license to conduct a regulated activity on a wetland or watercourse unless it is able to find that the activity proposed is consistent with all the applicable standards set forth herein . . . (c) [and it] minimizes damage from erosion, turbidity or siltation."
Local regulations are "subject to the interpretation of the commission itself." Shailer v. Planning Zoning Commission,26 Conn. App. 17, 22, 596 A.2d 1336 (1991). When reviewing an agency decision, "the trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts." Id. The regulations on which the Commission relies are local. It is the responsibility of the court to assess the Commission's interpretation and application of its regulations.
The Commission went through the list of regulations specified in its letter of denial of the plaintiff's application. The subject of each regulation was discussed in relation to the plaintiff's application at other times in the public hearing and its continuations. The Commission discussed what an alternative is and whether they had received alternatives, as specified by section 7.2(a). The Commission recognized its obligation not to commit resources that would lead to destruction of wetlands, as CT Page 301 specified by section 7.2(c). It came before the Commission that the result of the proposed activity might be a change in the land's handling of water, as specified by section 7.3(c). The Commission heard testimony concerning erosion problems that might be exacerbated by the proposed activity, as specified by section 7.3(c). The Commission's primary concern became the change in the waterway, which would occur with re-routing the stream, as specified by section 7.3(f). The Commission was aware of potential changes in soil conditions and requested improved information, as specified by section 7.3(h). Throughout the public hearing and its continuations, the Commission concerned itself with whether the plaintiff's proposed activity would damage the wetland on which it would be built, as specified by section 7.6(c).
The plaintiff's expert engineer, Steven D. Trinkaus, P.E., prepared three reports, which are part of the record. These reports address some of the fears expressed and difficulties anticipated by the Commission with the plaintiff's application.
Trinkaus conducted a Renovation Analysis of Nitrogen and found that the dilution rate would be 8.58 mg/liter, below the 10 mg/liter recommended limit. He concluded that the plaintiff's plans, but with a three bedroom house, "will not have any negative impact on the water quality in the existing intermittent brook." (Emphasis in original.)
Trinkaus performed weekly groundwater monitoring. He submitted his findings to the Commission in a letter and, when the Commission found a lack of "backup information," in a report. His conclusion in the letter and report were identical: from April to September 1993 "no water was ever observed in either of the pipes." The plaintiff's response to the Commission's need for "backup information" was "[t]he holes are empty, you know. I know Dave requested [more information], but . . . I think it's a waste of time." The plaintiff stated that "since June of 1991 there's never ever been any water in the deep holes which are quite a bit deeper than the water monitoring holes."
Trinkaus prepared an "Erosion and Sedimentation Control Plan." It describes the steps involved in building the driveway, house and septic system and in preventing and minimizing harm (such as erosion and sedimentation) to the land. The plan describes the seed mixtures to be used to renovate disturbed CT Page 302 areas and the ideal planting dates.
The record contains substantial evidence in support of at least one regulation listed by the Commission as a reason to deny the plaintiff's application. Huck v. Inland Wetlands Watercourses Agency, supra, (stating that the court must sustain the agency decision if the record provides support for any one reason given). A Commission's "reasonably conclud[ing] that an environmental impact could result from the plaintiff's actions" is enough to justify a denial of the application. MadridCorporation v. Inland Wetlands Agency, supra, 448. The Commission concluded that an environmental impact could result and that it justifiably denied the plaintiff's application.
C. Taking
The plaintiff argues that the denial of his application was illegal, arbitrary, and an abuse of discretion and therefore constituted an unconstitutional taking of his property without just compensation. The Commission argues that the plaintiff's taking claim is premature because the Commission has not issued a final decision depriving the plaintiff of the use of his property.
The test for determining whether a taking has occurred cannot be resolved on the basis of the denial of a single application or even the denial of multiple applications. Instead, the reviewing court must first establish that there was a final authoritative
decision by a commission and then conduct a two-pronged taking analysis. (Emphasis added.) Before a claim of unconstitutional taking is reached, the plaintiff must show that he has beenfinally deprived by the commission of his use of the property. (Emphasis in original.) Hoffman v. Inland Wetlands Commission,28 Conn. App. 262, 268-69, 610 A.2d 185 (1992), citing Gil v. InlandWetland Agency, 219 Conn. 404, 593 A.2d 1368 (1991).
It is the plaintiff's burden to prove that he has been finally deprived by the Commission of the use of his property.Smith v. Zoning Board of Appeals, 227 Conn. 71, 99, 629 A.2d 1089
(1993). The plaintiff must show that the rejection of the current application indicates that the Commission would not accept any other use of the property than that proposed by the applicant. (Emphasis in original.) Gil v. Inland Wetlands Agency, supra, 415; see also Smith v. Zoning Board of Appeals, supra, 99-100. CT Page 303
In arguing that the Commission committed a taking, the plaintiff argues that he bought a lot zoned for single family dwellings; that the Commission suggested that a smaller house might receive more favorable treatment by the Commission; that the Commission raised no substantive concerns regarding the house or septic system; that the Commission failed to discuss his proposed alternative plans but focused only on the driveway; and that the Commissioners wrongfully believe in their power to deny him any use of the land.
The plaintiff further observes that the Commission had denied his three previous applications. The record provides little information regarding the first application other than, in the words of Commissioner Hill, it was "denied because of adverse environmental impacts to wetlands watercourses." The record indicates that the second application — for a storage shed and driveway only — was "withdrawn," again in the words of Commissioner Hill. The Commission rejected the plaintiff's third application with the following concluding paragraph: "[a]s you are well aware, among other reasons, the Commission was concerned with the size of your proposed house, therefore, I believe that a smaller size house could possibly receive more favorable consideration from the Commission."
For the current, fourth, application, the Commission focused on the driveway as the biggest problem, without formulating specific problems concerning any one plan for the house or septic system. In fact, the plaintiff's lawyer asked whether it was necessary for the plaintiff to have reduced the size of the house from four to two bedrooms and to have offered to reduce the septic system to a two bedroom one; she was not answered.
The house planned for this application was smaller and the size met with no opposition from any commissioner. Regarding the septic system, the Commission voiced no opposition to the placement of the tanks or leaching fields on any of the plans. The Commission focused on the system's size, despite receipt of a letter stating that there is no problem in having a larger septic system than the number of bedrooms requires. The plaintiff did not explain his retraction of his offer to submit plans for a two bedroom septic system, and the Commission never commented on his retraction.
The Commission's denial of the plaintiff's fourth application focused on the driveway. One commissioner stated that "the issue CT Page 304 of the house on the plot of land doesn't seem to me as important as the watercourse and the change of that in the driveway and the impact that that has on it." This commissioner went on to explain that the plaintiff addressed himself mostly to the house and the septic and the sizes of the house and the septic. Another commissioner explained that the "watercourse problem to [this Commissioner] was the most important part of this application — the most potentially destructive part . . . because [of] the driveway." A third commissioner summarized that "the driveway and watercourse issues were not addressed."
Some commissioners concluded that all feasible and prudent alternatives had not been explored regarding the driveway and watercourse. The plaintiff stated that the plans for the driveway were unchanged from the previous application. He emphasized that MacBroom's advice led him to the current design, rerouting the stream and having the driveway go straight up the side of the property (to decrease the footprint) instead of on the diagonal (to improve runoff). The record reflects that all involved had hoped that an easement from the Crane property would have been possible. That option fell through.
The plaintiff must prove he has explored all feasible and prudent alternatives; it is his burden. Huck v. Inland Wetlands Watercourses Agency, supra, 553; Hoffman v. Inland WetlandsCommission, supra, 265.
The Commission is entitled to have an applicant explore alternatives; indeed it cannot approve of an application "unless the Commission finds that a feasible and prudent alternative does not exist." If the Commission feels that they do not agree with that determination that all alternatives have been explored and that some other reasonable, feasible and prudent alternative does exist, then they really don't have any leeway, they have to deny the application.
The plaintiff submitted three alternate plans: A, B and C. The plans vary the placement of the septic system, the shape of the driveway's turnaround, and the placement of the house itself. In submitting alternate plans, the plaintiff did not submit a single application on which the Commission could vote. The plaintiff explained that throughout his previous and current applications the Commission has asked him for alternatives and that he submitted three plans to provide the desired alternatives. The Commission maintains that it is not in the CT Page 305 business of comparing plans. The plaintiff expressed a preference for one of the three plans, plan A, and requested feedback in order to meet any outstanding Commission demand. The Commission's position is that "elimination of alternatives for various reasons has to be made by the applicant." With respect to the plaintiff's application, the Commission said that "we've heard some of the Commission members say that they felt that perhaps another alternative did exist as far as access to the property."
It is the plaintiff's responsibility to submit one defined application. The failure of the plaintiff to present a unified application prevented the Commission from being able to approve of application 93-17 and to make a final agency decision. This was a sufficient reason for the Commission to deny the plaintiff's application. The Court needs only one reason to dismiss the plaintiff's application. See Huck v. Inland Wetlands Watercourses Agency, supra, 539-40.
There has been no final authoritative decision. There has not been final agency action. Thus, there has been no unconstitutional taking of the plaintiff's land without just compensation.
VII. Conclusion
For the foregoing reasons, the court dismisses the plaintiff's appeal.
Mihalakos, J.