[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This appeal involves the denial by the Litchfield Planning and Zoning Commission ("Commission") of the special exception and subdivision application of Plaintiff, James B. Irwin, Sr. pertaining to 14.9 more or less acres of land located on Hutchinson Parkway and Butternut Road in Litchfield, Connecticut. The land was recently split off by plaintiff from a larger parcel leaving the 14.9 ares [acres] piece and an 83 acre piece. R-V1, 18. The special exception application requested approval to create two interior lots (#3 and #4) with one common driveway; the subdivision application was for approval of a four-lot residential subdivision including two interior lots. R-1, 2. Three of the lots range in size from 2 to 2.8 acres and the fourth is approximately six acres. The remaining acreage consists of setbacks, open space, wetlands (3.1 acres) and a conservation easement (includes 3 acres of wetlands and 3 acres of upland soils) to protect the Butternut Brook streambelt which borders the property. R-site plan.
The property is located in an R-80 zoning district with a two acre minimum lot size. On Butternut Road, the property has 2,260 feet of frontage based on Plaintiff's own previous application for a swine shelter on the property. R. Vol. A. VIII. The defendant Karen Grimes' property abuts the plaintiff's property. R-site plan.
The Litchfield Subdivision Regulations provide for CT Page 779 a special treatment and expert analysis where an application involves property within flood plains, or where it includes or affects inland wetlands and watercourses, has slopes of 20% or greater, or includes land lying within 300 feet of sub-regional watershed lines. R-XI Section 5.1. To reduce the adverse impact of these features, the Commission may require the "redesign of the subdivision including lot area and location of reserved open space." If less than 20,000 square feet of proposed buildable area affects such land areas, the Commission may waive this requirement.
The record shows that the Irwin property has steep slopes (over 20% grade) a streambelt, ledge outcroppings, and a watercourse through the property making it especially difficult to develop. Without a special exception for an interior lot, it can support a maximum of 3 lots consistent with the existing wetlands approval of the driveway crossing to lots 3 and 4. The neighborhood is rural and is generally characterized by large parcels used for farming and contains important historical farmhouses. R-IX, p. 19.
The numerous deeds, maps and assessors cards show that many neighboring properties have areas utilized for farming and open space. R-VIII 12-28. For example, the Grimes' neighboring property includes 10.2 acres preserved for farming. Plaintiff's neighboring property from which the subject property was cut includes a horse farm. R-V2, p. 25. The assessor's cards show that Mr. Irwin's abutting property has been classified as 20 acres for hay, 42.41 acres for pasture and 19 acres woodland. In 1992 during the wetland and subdivision applications on the property, the plaintiff applied for and received approval for a swine shelter on the property. R-VIII 9. The Scherr-Thoss's properties border the application property to the north and west and have 23.27, 19.0 and 6 acres in hay on three parcels; the Ikards have 18.13 acres in hay; William Sellars has 14.16 acres in pasture and 10.57 acres in hay on one piece and with Patricia Sellars, he has 7.34 acres in hay on another parcel. The Nieds have 5.16 acres in farmland on one piece and 2.8 acres and 3.2 acres respectively on two others. R-VIII, 10, 12. CT Page 780
To obtain a special permit exception for interior lots, the applicant must show consistency with the plan of development and the need for the use or activity. R-X Art VI p. 6. The town's plan of development specifically designates properties along Beach Street as "prime and important farmlands" for preservation and all "private and public options shall be utilized for preservation." R-XIII. The plaintiff's property was located between Beach Street and Hutchinson Parkway before he severed the Hutchinson parcel for this application and therefore the application property is within this designation.
The vision plan amendment to the plan of development emphasizes the maintenance of the town's rural atmosphere and historic resources. R-XII, 36. The area along Hutchinson Parkway from Sellars' farm to Mike Road and including the plaintiff's property is slated for separate, open space preservation. R-XIII. The 1984 plan also sets preservation of open space and historic townscapes as a goal. Furthermore, the open space character of the neighborhood has been determined as relevant to the abutting property owned by Grimes which has been identified in a historical and architectural resources survey. The Connecticut Historical Commission inventory of the Grimes property calls attention to the "splendid view of the surrounding open land" [and] scattered old trees in the vicinity." See letter, David F. Ransom, Architectural Historian, R-V 17.
The record shows that the application land is sensitive. The streambelt of Butternut Brook is identified as a protected streambelt under the plan of development. R-V, 34; XIII. The plan of development provides that the reason for streambelt preservation is to curtail pollution, siltation, sedimentation and erosion; to protect water quality; to reduce the hazard of flood loss; to promote scenic beauty; to link wetland corridors with open space and to enhance the quality of life by providing breathing space and visual balance to urban uses.
Significant areas of the proposed lots are composed of steep slopes, ledge, setbacks and conservation restrictions. The record includes a map evidencing the CT Page 781 problems with the four-lot layout. Although the lots meet the minimum zoning lot size requirements, only a very small amount of land is buildable with house and septic. The record shows that the proposed common driveway to the proposed interior lots is on top of an active spring and would bury it. R-IX 6. Edward Pawlak, a wetland scientist submitted a record which warned that the driveway and septic system on proposed interior Lot #3 will be constructed on slopes ranging from 25 to 27 percent and that the slopes at the northwest corner of the proposed house are twenty percent. R-IX 8. He opined that the potential for erosion of exposed and disturbed soils during construction increase with the slope of the land. The Litchfield County Soil Survey classifies the development potential according to soil type and slope class. R-VII 33. On Lot 4, the common driveway is to be constructed on slopes which range from 18 to 20 percent, while slopes in the vicinity of the house and septic system are 17 percent. R-IX 8. The SCS designated limitations for the two primary upland soils found on the property show severe constraints for a variety of development activities. IX-8, 5. The Irwin application is well within the special review requirements of subdivision regulation 5.1.
The common driveway proposed to serve the two interior lots is located directly next to Grime's property with only a 10 foot buffer separating the two. R-IX 4. A report prepared by Frank O'Neill of Tom Collins Appraisers for Perley and Karen Grimes indicates that the "expected effect" of the common driveway, along the Grimes border "is to open up the view along the Grimes property into the Irwin property and the proposed new homes." Mr. O'Neill opines that because the driveway is near Grimes meadow, it will be quite visible and detract from the present country setting. He also notes that the quiet country appearance will be further undermined by the Grimes meadow being bordered on one side by Hutchinson Parkway and on the other by the proposed driveway. Mr. O'Neill finds that the view of the new homes from the Grimes property and affect on the rustic flavor of the street will reduce the Grimes property value 5% to 10%. R-IX 20. The plaintiff presented no expert appraisal testimony to counter this opinion. CT Page 782
Tom Daly an engineer with Milone and MacBroom testified that the subdivision property contains a small buildable area. He characterizes the site as "busy" with a lot of utilities, grading, conservation easements and 20% slopes. If discounts are made for setbacks, conservation easements, ledge and steep slopes, only 39% is buildable on lot 1; 18% on lot 2; 15% on lot 3; and 26% on lot 4; R-V3 8, 13; driveways, septic system with primary and reserve leaching fields, building site, and well sites must fit in this buildable area. R-Art. VIII, Section 4B. He also testified that the density of this rural area is home residence for forty to fifty acres. The plaintiff's proposed density is one residence per 3.6 acres. R-V3 6.
Pursuant to the special exception standards of Article 6 Section 13, the Commission is entitled to consider: existing and probable future character of the neighborhood; zoning density; harmonious relationship with the proposed and existing buildings; water, sewer and drainage; ground water considerations, and the character of the land.
Many experts for both the plaintiff and the defendant Grimes testified and provided reports to the Commission at the public hearings. For example, the plaintiff provided: an environmental assessment report and testimony by Karen Hayward; R-V-2; an engineering report of the project and testimony by Dennis McMorrow, P.E. of Carroccio-Covill Associates, Inc.; R-VII-3; V 15; soil scientist report by Bruce Laskey of Northeast Soils, Inc.; R-VII 3. All of these experts spoke in favor of the application.
The defendant Grimes provided engineering reports and testimony by Thomas J. Daly, Civil Engineer and James MacBroom P.E. both of Milone MacBroom, Inc.; R-IX 1, 2, 3, 4, 6; Landscape Agriculture and Planning Report by Vincent McDermott, Milone MacBroom, Inc.; R-IX 5, 7; environmental report by Edward M. Pawlak; wetland scientist, Ecosystems; R-IX 8; report and testimony of Soil Scientist Kenneth C. Stevens, Jr. Registered Professional Soil Scientist; Soil Science and Environment Services and Environmental Services, Inc.; R-B, IX 9; CT Page 783 report and testimony of David F. Ransom, Architectural Historian; R-B, IX 27. These experts all criticized the interior lot and subdivision plan.
After two full public hearing sessions, with testimony from many experts and a site visit, the Commission denied the special permit application which is a condition precedent to the subdivision approval. The Commission gave its reasons for a denial of the special exception and subdivision as follows:
 1. The application does not meet the requirements of Article VI 5A Interior Lots, Subsection 5a which provides that "The Applicant shall show that the design and layout of the subdivision with the proposed interior lots is in keeping with the Town Plan of Development."
 2. The application does not meet the requirements of Article VI A Interior Lots, Subsection 5b which provides that "The Applicant shall show that the subdivision with the proposed interior lots will preserve important natural resource features as identified on the Town Plan of Development maps and other studies adopted by the commission, including streambelt lands, farmlands (especially active farmland), land on ridge lines, and will result in the preservation of the natural landscape along a Town Road or a view from a Town road or proposed subdivision road;"
 3. The proposed subdivision with the interior lots does not comply with the "existing and probable future character of the neighborhood" as required by Article VI A Interior Lots, Subsection 4b;
 4. The proposed subdivision with the interior lots does not comply with "The provision for creation of a harmonious relationship between proposed and existing buildings in the vicinity; specifically with regard to the CT Page 784 visual relationship of said buildings in terms of their terrain, use, scale, proportions, and particularly, the historic significance of the existing buildings."
R Vol A IV 6 p. 3.
The Commission's collective reasons for denial include:
 1. that the proposed subdivision with the interior lots is "too intensive development for a limited and fragile piece of land;
 2. the affect of the proposed subdivisions on land values.
R Vol A IV 6, p. 3
Plaintiff brought this appeal claiming that the denial was illegal, arbitrary and in abuse of the Commission's discretion in that:
 a. The application complies with all applicable and enforceable standards of the regulations.
 b. That the Commission found the proposed "homes" were not in keeping with the neighborhood, existing buildings in the neighborhood and standards contained in the plan of development when the property is zoned for single family homes on lots of the size proposed and when the Plan of Development does not recommend changing the zoning classification of the property.
 c. That the Commission improperly determined that neighbors voluntary placement of restrictions on their property afforded a basis for determining that plaintiffs proposal was too dense a development and not in keeping with the character of the neighborhood.
 d. The relevant and probative evidence in the record does not support the conclusions of the Commission.
CT Page 785
The appeal of a special permit and subdivision denial is pursuant to Conn. Gen. Stat. Section 8-8. The courts reviewing such appeals have consistently ruled that if the commission gives any reason for its denial that is adequately supported by the record and germane to the proper considerations for the application before it, the court will defer to the commission and dismiss the appeal. The courts do not hold the commission to perfect articulation of its reasons. Fuller, Connecticut Land Use Law and Practice, Section 33.1, p 563-64. Where reasons are given it is sufficient that any one is a valid rationale for denial. Id. at 566 citing Burnham v.Planning and Zoning Commission of Town of South Windsor,189 Conn. 261, 265 (1983). The Commission is upheld if substantial evidence in the record supports its decision.Connecticut Health Facilities, Inc. v. Zoning Board ofAppeals of City of Stamford, 29 Conn. App. 1, 9-10
(1992). In deciding the appeal, the court may not substitute its determination of the facts for that of the commission. Id. at 563.
When reviewing a special permit application and a subdivision application the commission acts in an administrative capacity. A.P.W. Holding Corporation v.Planning and Zoning Board of City of Milford, 167 Conn. 182,186 (1974); Beach v. Planning and Zoning Commissionof the Twon [Town] of Milford, 141 Conn. 79 (1954). As to special permits, the commission must determine if the standards of the zoning regulations have been met.Farina v. Zoning Board of Appeals of the Town ofTrumbull, 157 Conn. 420, 422 (1969). The special permit application must meet both the specific standards of the regulations as well as the more general standards relating to the protection of "public health, safety, convenience and property values." Whisper Wind Dev.Corp. v. Plan Zoning Comm., 32 Conn. App. 515, 520
(1993).
 The basic rationale for the special permit. . . is that while certain land uses may be generally compatible with the uses permitted as of right . . . their nature is such that their precise location and mode of operation must be individually regulated because of the CT Page 786 particular topography, traffic problems, neighboring uses, etc., of the site.
Id. at 520 citing T. Tondro, Connecticut Land Use Regulation (2nd Ed.) p. 175; Barberino Realty Development Corporation v. Planning Zoning Commission,222 Conn. 607, 612 (1992). Contrary to plaintiff's assertion, an interior lot use is a different use than a frontage use. The neighborhood is differently affected. A special permit may be denied on the basis of the general considerations alone. Id. citing Cameo ParkHomes, Inc. v. Planning Zoning Commission, 150 Conn. 672
(1963). The Connecticut Supreme Court has held "[o]n more than one occasion . . . that standards set forth in the zoning regulations for the granting of a special permit may be general in nature." Id. at 521 citingConnecticut Health Facilities, Inc. v. Zoning Board ofAppeals, 29 Conn. App. 1, 7 (1992). The agency has "reasonable discretion in deciding whether the proposed use meets the conditions in the zoning regulations." Fuller, Connecticut Land Use Law and Practice, Section 33.4, p. 570 citing Abramson v. Zoning Board of Appealsof Town of Westport, 143 Conn. 211, 213 (1956).
The commission is required to deny an application for a special permit which does not meet the requirements of the zoning regulations. Servidio v. Planning andZoning Commission of Town of Stonington, 8 Conn. App. 395
(1986). "The [commission's] action must be sustained if even one of the stated reasons is sufficient to support it." Whisper Wind Dev. Corp, at 521 citing Felsman v.Zoning Commission, 31 Conn. App. 674, 678 (1993). If there is conflicting evidence in support of the Commission's stated rationale, "the reviewing court cannot substitute its judgment as to the weight of the evidence for that of the commission." Id. citingHousatonic Terminal Corporation v. Planning ZoningBoard, 168 Conn. 304, 306 (1975). So long as an honest judgment is reasonably and fairly exercised by the commission after a full hearing, a court may not disturb a commission's decision. Cameo Park Homes, Inc., v.Planning Zoning Commission, supra at 677.
In deciding subdivision applications, the planning commission is confined to determining if the subdivision CT Page 787 application complies with the subdivision regulations. Where the application does not comply with the regulations, the commission must deny the application.South East Property Owners and Residents Ass'n v. CityPlan Commission of City of New Britain, 156 Conn. 587,591-92 (1968). As with special permits, if the court finds that any of the reasons given by the Commission are supported by the regulations and the record, the denial will be upheld. Crescent Development Corporation v.Planning Commission of New Canaan, 148 Conn. 145, 150
(1961).
The Connecticut courts have ruled that a separate declaratory action is necessary for challenging the validity of a subdivision regulation. In a recent superior court decision, the court held that a declaratory judgment action was required to challenge for vagueness the validity of a subdivision regulation restricting development of land areas with slopes.Allegretti v. Cromwell Planning and Zoning Commission,
Superior Court, judicial district of Middlesex at Middletown, Docket No. 66954 (September 1, 1993, Clifford, J., 8 CSCR 1262). See Crisofaro v. Planning andZoning Commission of Town of Burlington 11 Conn. App. 260
(1987), cert. denied, 204 Conn. 810. Plaintiff has challenged the validity of the zoning regulations without a separate declaratory action. These challenges fail.
 I
The plaintiff alleges that the application complies with all "applicable and enforceable standards" of the regulations and therefore must be approved. Interior lots are approvable subject to the special exception standards of Article 5A of the zoning regulations. Article VI Section 5a contains eight (8) specific standards and incorporates the general standards of Article VIII. All of these must be met to approve interior lots. The Commission found the application failed to comply with four of these standards: two specific and two general. In addition the Commission made a finding that the interior lot design was "too intensive development for a limited and fragile piece of land." The denial was also based upon the affect of the proposed subdivision on land values. R-IV 6 p. 3. The CT Page 788 commission found that the:
 a. Design and layout failed to comply with the special permit requirements that the proposal preserve natural resource features as identified in the Plan of Development maps including farmlands, streambelts, preserve natural landscape along a town road or the view from a town road or a proposed subdivision road. Specific Standard, R-X Article VI Section 5A.
 b. Design and layout is not in keeping with the Town Plan of Development; R-X Article VI Section 5A.
 c. Subdivision with interior lots is not in keeping with existing and probable future character of the neighborhood in which the use is located; General Standard R-X, Article VIII 4b.
 d. Subdivision with interior lots fails to create a harmonious relationship between proposed and existing buildings in the vicinity; specifically with regard to the visual relationship of said buildings in terms of their terrain, use, scale, proportions, and particularly, the historic significance of the existing buildings. General Standard R-X Article VII 4c.
Thus, the Commission stated its reason for the denial of the interior lots. In so doing, the court is left to determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the commission was required to apply in considering special permits under the zoning regulations. Protect Hamden/North Haven FromExcessive Traffic Pollution Inc. v. Planning ZoningCommission, 220 Conn. 527, 544 (1991). In this case the assigned reasons are pertinent considerations under the zoning regulations because the specific finding was that four express standards in the regulations were not met.
II CT Page 789
1. The first reason was that design and layout failed to comply with the special permit requirements that the proposal preserve natural resource features as identified in the Plan of Development maps including farmlands, streambelts, and natural landscape along a town road or the view from a town road or a proposed subdivision road. Specific Standard, R-X Article VI Section 5A. The record shows that the interior lot design included a common driveway along the border of the defendant Grimes' property. The record indicates that this common driveway would parallel the Grimes' pasture. The neighborhood is significantly involved in farming operations as evidenced by the assessor's cards and testimony of specific owners. R-VII p. 10. Furthermore, historic property in the area would be affected by the location of the common driveway to the interior lot. See testimony of David F. Ransom, Architectural Historian R-IX 17.
The record also shows that there may be damage to trees to construct the driveway and to install the redirected drainage culvert. The layout and design of the subdivision with the interior lots includes a re-routing of the drainage. There is conflicting testimony regarding the effects of this rerouting on the streambelt. However, the Commission had a right to believe that the fragile property including the streambelt could be negatively affected. The plan of development lists the streambelt and preservation of open spaces an important goal of the town. Contrary to the plaintiff's assertion, the regulation requiring consistency with the natural resources outlined in the plan of development is an acceptable regulation. This is not a case where the Commission, without reference to a particular provision, decides on an ad hoc basis to make plan of development compliance a requirement of an application. In this case the references to the plan of development are incorporated into the regulations. Furthermore, in this particular regulation the plan only serves as a list of factors and map source. The record amply supports the Commission's decision as to its first reason for denial. The Commission's finding that the land is fragile, is supported by the testimony of the experts as to the small buildable area, the streambelt concerns, the soil erosion concerns relating to steep slopes, the septic system CT Page 790 issues relating to steep slopes and soil types. All of these items affect the neighborhood.
 III
The second reason for denial was that the design and layout is not in keeping with the town plan of development as required by Article VI Section 5A of the zoning regulations. The plaintiff argues a denial based on consistency with a plan of development is illegal. This is not the case with respect to special permits. InSmith v. Zoning Board of Appeals, 227 Conn. 71, 78 (1993) the court specifically upheld the trial court's conclusions that the board had authority to consider the historic streetscape partly because the purpose of the subdivision regulations is to further the orderly development of the town in accordance with the town plan of development. "Because the town plan has as one of its basic objectives the preservation of historic resources," the board was found to have acted within its authority in considering the historic streetscape. Id. In Smith the plaintiff's subdivision proposal was found to impair the historic streetscape on the basis that the Smith's side of Strickland Road is characterized by homes on lots with sweeping front lawns. The plaintiff's plan to cover their front law into a building lot and construct thereon a house within fifteen feet from a line of trees would alter the streetscape. Id. The supreme court considered whether the board could deny a subdivision application based on the plan of development and the review of historic factors. Although the supreme court did not approve a denial of subdivision approval solely on the basis of the town plan, it did approve a denial based on a regulation which references the town plan. "This reference puts prospective subdivision applicants on notice that the town plan will help define the specific terms in the subdivision regulations." Id. at 94. The logic of Smith is directly analogous to the present case. Moreover, when deciding a special permit application, the Litchfield Planning and Zoning Commission has even more discretion than the Greenwich Commission had when considering the Smith subdivision. T. Tondro, Connecticut Land Use Regulation at 179.
The Commission's denial for inconsistency with the CT Page 791 town plan is supported by the record. The record shows that the plan of development specifically designates properties along Beach Street as "prime and important farmlands" for preservation and advises that all "private and public options shall be utilized for preservation." R-VIII 34. Plaintiff's property was located between Beach Street and Hutchinson Parkway before he severed the Hutchinson parcel for this application and, thus, is in the protected area.
The vision plan amendment to the plan of development emphasizes the maintenance of the town's rural atmosphere and historic resources. R-XII. The plan of development provides that the area along Hutchinson Parkway from Sellar's farm to Mike Road and including the plaintiff's property is slated for separate open space preservation. R-IX 14, p. 3. The 1984 plan also sets preservation of open space and historic townscapes as a goal. Furthermore, the open space character of the neighborhood has been determined as relevant to the defendant Grimes' abutting property which has bene [been] identified in an Historical and Architectural Resources Survey. The Connecticut Historical Commission inventory of the Grimes' property calls attention to the "splendid view of the surrounding open land" [and] scattered old trees in the vicinity." See letter, David F. Ransom, Architectural Historian. R-IX 17.
The record shows that the application land is sensitive. The streambelt of Butternut Brook is identified as a protected streambelt under the plan of development. R-XIII. The reason for streambelt preservation is to curtail pollution, siltation, sedimentation and erosion; to protect water quality; to reduce the hazard of flood loss; to promote scenic beauty; to link wetland corridors with open space and to enhance the quality of life by providing breathing space and visual balance to urban uses. R-XIII. The potential danger to the streambelt is well-documented in the record. The design of the subdivision including interior lots has the effect of increasing the number of lots, thereby increasing the number of new houses in an historic rural setting. The Commission could reasonably have found that the less intensive development was more in keeping with the provision for open space, breathing CT Page 792 space and visual balance.
 IV
The third reason for denial of the subdivision with interior lots is that they are not in keeping with existing and probable future character of the neighborhood in which the use is located; General Standard R-X Article VIII 4. At the hearing an appraiser testified that the provision for an interior lot with the common driveway along the Grimes property line would reduce value of the Grimes property by five to ten percent. The appraiser testified that the view of the new homes from the Grimes property will have an effect on the rustic flavor of the street. R-IX 20. The properties in the neighborhood have many areas classified and preserved for farming. The application site due to a small building area is a result of steep slopes, wetlands, watercourse setbacks, restrictions protecting the streambelt and ledge. Based on the current wetland approval for one wetland driveway crossing, the creation of the interior lots increases by one the number of lots possible on the property under the current approvals. Thus, denial based on intensity was warranted.
 V
The fourth reason for denial was that the subdivision with interior lots fails to create a harmonious relationship between proposed and existing buildings in the vicinity; specifically with regard to the visual relationship of said buildings in terms of their terrain, use, scale, proportions, and particularly, the historic significance of the existing buildings. General Standard R-X — Article VIII 4c. The common driveway proposed to serve the two interior lots is located directly next to property with only a 10 foot buffer separating the two. R-IX 4. A report prepared by Frank O'Neill of Tom Collins Appraisals for Perley and Karen Grimes indicates that the "expected effect" of the common driveway along the Grimes border "is to open up the view along the Grimes property into the Irwin property and the proposed new homes." R-IX 20. Mr. O'Neill opines that because the driveway is near the Grimes meadow it will be quite visible and detract from CT Page 793 the present country setting. He also notes that the quiet country appearance will be further undermined by the Grimes meadow being bordered on one side by Hutchinson Parkway and on the other by the proposed driveway. Mr. O'Neill concludes that the view of the new homes from the Grimes property and affect on the rustic flavor of the street will reduce Grimes' property values five to ten percent. R-IX 20. Plaintiff's abutting property has been inventoried for its historical merit as have other properties in the neighborhood. An architectural historian testified that an historic property in the area would be affected by the location of the common driveway to the interior lot. See testimony of David F. Ransom, R-Vol. B, IX 17.
Plaintiff challenges the Commission's denial based on failure of the subdivision and interior lots to create a harmonious relationship with existing buildings in the vicinity with regard to "visual relationship: of buildings in terms of "terrain, use, scale, proportions and historic significance." R-X, Article VII, Section 4c. The plaintiff contends that this regulation impermissibly calls for the Commission to judge the application on aesthetics. Plaintiff's brief, p. 16. Not only is this an incorrect statement of zoning law, there is nothing to suggest that the Commission based its decision solely on aesthetics. Plaintiff's brief, p. 23. The Commission did not find that the proposed homes were out of character with the residential neighborhood. The Commission stated that it was concerned about property values, the "intensity" of the development and "fragile" character of the land. Thus, plaintiff incorrectly classifies the Commission's concerns as mere "aesthetics." Even so, aesthetics are appropriate considerations for the Commission.
In Viacom Broadcasting the appellate court rules that the zoning delegation statute (Conn. Gen. Stat. Section 8-2) allows towns "to impose conditions related to aesthetics and property values on the granting of a special exception." Town of Farmington v. ViacomBroadcasting, Inc., 10 Conn. App. 196, cert. denied,203 Conn. 808 (1987). In Viacom, the court upheld the commission's rationale that a proposed development would adversely affect property values or cause "other CT Page 794 detriments to the neighborhood or its residents." Id. In Glendenning v. Conservation Commission of Fairfield,12 Conn. App. 47, 550-56, the court based aggrievement on plaintiff's claim that:
 the destruction of a panoramic view of a beautiful and tranquil harbor, the loss of historic and aesthetic values and a diminution of the opportunity of citizens to seek serenity and spiritual renewal from the simple enjoyment of an unencumbered view of a unique vista.
12 Conn. App. 437, 55-56, appeal dismissed 205 Conn. 802
(1987).
In Carlson v. Fisher, 18 Conn. App. 488 (1989), the court held that a planning commission could impose design conditions on a subdivision approval where the zoning regulations authorized compliance with a policy stated in the town's plan of development of encouraging building design that supported the established character of the town. See Metromedia, Inc. v. City of San Diego,453 U.S. 490 (1981). In yet another case, the court upheld a requirement for "reasonable harmony with surrounding structures." Daughters of St. Paul, Inc. v. Zoning Boardof Appeals of Trumbull, 17 Conn. App. 53, 55 (1988). Neighborhood preservation was approved as a purpose for zoning in Husti v. Zuckerman Enterprise, Ltd., 199 Conn. 575,581-82; appeal dismissed 479 U.S. 802 (1986).
The Planning and Zoning Commission's ruling was based on concerns for property values and that the intensity of the development was out of character with what was shown to be a rural farming neighborhood. R-V3. Maintaining rural character is a proper zoning purpose consistent with the state's policy to preserve agricultural lands in rural areas. Central Bank forSavings v. Planning and Zoning Commission of Cromwell,13 Conn. App. 448, 456 (1988).
The plaintiff argues that the Commission improperly considered and found the proposed homes were not in keeping with the neighborhood, existing buildings in the neighborhood and standards contained in the Plan of CT Page 795 Development when the property is zoned for single family homes on lots of the size proposed and when the plan of development does not recommend changing the zoning classification of the property. The plaintiff is attempting to apply the rationale of Sowin Associates v.Planning and Zoning Commission, 23 Conn. App. 376 (1990) to the present case. The theory in Sowin is that if a use is permitted under zoning, inquiry into traffic, municipal services, property values or general harmony of a district is precluded. Plaintiff's brief, p. 27.Sowin relies on TLC Dev., Inc. v. Planning and ZoningCommission of Branford, 215 Conn. 527 (1990); however, the main point of that theory has now been rejected by the supreme court in Friedman v. Planning and ZoningCommission of Rocky Hill, 222 Conn. 262, 266 (1992); see also, Barberino v. Planning and Zoning Commission ofFarmington, 222 Conn. at 610 (1990). Friedman overturns the Sowin — TLC rule to allow such an inquiry when the regulations permit it. Professor Tondro notes that "little appears to remain of Sowin Assocs., given this rejection of its central premise. Sound land use regulations require inquiry into property values, general harmony, and the like to take place for each project, and every municipality ought to ensure that its regulations authorize it to do so" T. Tondro, Connecticut Land Use Regulations, 1995 cumulative supplement at 45.
Plaintiff mischaracterizes the Commission's findings and decision by asserting that the Commission improperly determined that "the neighbor's voluntary placement of restrictions on her property afforded a basis for determining that plaintiff's proposal was too dense a development and not in keeping with the character of the neighborhood." The Commission's actual finding was that the development was too intensive "for the limited and fragile piece of land." R-IV 6. The Commission did not mention the private restrictions as a basis for its collective decision. The fragility of the land is borne out by the statistics in the record that only 39% of lot 1 is buildable, 28% of lot 2, 15% of lot 3 and 26% of lot 4. R-V3 p. 8, 13. Driveways, septic systems with primary and reserve leaching fields, building sites and well sites must fit in this buildable area. R-Art. VIII, Section 4b. CT Page 796
 VI
The plaintiff claims that the relevant and probative evidence in the record does not support the conclusions of the Commission. The Commission gave four reasons for its denial of the special permit. The court finds that all are supported by the record and the decision of the Commission is upheld and the appeal is dismissed.
PICKETT, J.